UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS M. COOLEY LAW SCHOOL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05cv2317 (RJL) |
| | ) | |
| COUNCIL OF THE SECTION OF LEGAL | ) | |
| EDUCATION AND ADMISSIONS TO THE BAR | ) | |
| OF THE AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Thomas M. Cooley Law School, for the reasons set forth in its complaint and the accompanying memorandum, moves for an order directing defendant Council of the Section on Legal Education and Admissions to the Bar of the American Bar Association, during the pendency of this action, to process the branch-campus applications that Cooley submitted to the Council on June 22, 2005 (within the timeframe established by the Council's own rules) by taking whatever actions the Council deems necessary, consistent with Cooley's status as a fully approved law school that is in compliance with all current ABA Standards and

Interpretations, for the Council to be in a position to make a reasoned, fully

informed decision on the merits of those applications at its February 2006 meeting.

> /s/ ALEX BLANTON
> Alex Blanton, D.C. Bar No. 169623
> Michael L. Cioffi
> BLANK ROME, LLP
>   600 New Hampshire Ave., NW
>   Washington, D.C. 20037
>   202-772-5909
>   Fax: 202-572-8357
>   Email: Blanton@BlankRome.com

026151.00601/35703544v.3

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS M. COOLEY LAW SCHOOL, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| *v.* ) | Civil Action No. 05cv2317 (RJL) |
| ) | |
| COUNCIL OF THE SECTION OF LEGAL ) | |
| EDUCATION AND ADMISSIONS TO THE BAR ) | |
| OF THE AMERICAN BAR ASSOCIATION, ) | |
| ) | |
| and ) | |
| ) | |
| THE AMERICAN BAR ASSOCIATION, ) | |
| ) | |
| *Defendants.* ) | |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Thomas M. Cooley Law School, whose main campus is in Lansing,

Michigan, has been attempting to expand its educational operations by opening new

campuses in Michigan since June 2002. Cooley has already made all the physical,

operational and financial arrangements necessary to begin operations at these new

campuses and would have begun those operations long ago but for the need to

obtain prior approval from defendant Council of the Section of Legal Education and

Admissions to the Bar of the American Bar Association (Council).[1] As verified in

---

[1] The Council is the recognized accrediting body for American law schools. Most
jurisdictions in the United States have determined that graduates of law schools
accredited by the Council—known as ABA-approved law schools—are eligible to
take their bar exam. The United States Department of Education has recognized

Cooley's complaint, the Council, whose prior approval is necessary if Cooley is to maintain its status as an ABA-approved law school, has unnecessarily and unreasonably delayed its consideration of Cooley's applications. By its motion for a preliminary injunction, Cooley seeks immediate injunctive relief to alleviate and avoid the irreparable harm that it will suffer during the pendency of this action if the Council is permitted to continue to delay action on Cooley's applications to operate branch campuses in Oakland County and Grand Rapids, Michigan.

## FACTS[2]

Cooley first applied for Council approval of its proposed new Oakland campus in June 2002. At that time, the Council was in the process of considering new criteria (called Interpretations) for approving operations at new campuses. The new Interpretations were much less onerous than the then-existing criteria, which, in essence, provided that any substantial operations at an additional campus must meet the standards for establishing an entirely new law school. In accordance with guidance provided to Cooley by the Council's agent—the Consultant on Legal Education to the ABA—Cooley structured its application on the new Interpretations, which were expected to become effective by the time Cooley's application was considered by the Council. The Consultant processed Cooley's application on the same basis, assuming that the Council would judge the

---

the Council as an authority for purposes of accrediting law schools whose students are eligible to participate in DOE programs, including student loans. Thus, the Council's imprimatur is crucial to any law school's ability to attract and retain students and to the students' ability to attend the law school of their choice.

2

application by the new Interpretations. The Council deferred its approval of the new Interpretations from July until December 2002, and consequently those Interpretations did not become effective until the day after the Council considered Cooley's application in February 2003. Despite the Council's knowledge that the new Interpretations were to become effective the next day, it insisted on judging Cooley's application by the old, more onerous criteria. As would be expected for an application that was prepared and processed under the new Interpretations, the Council found that the application failed to meet the more onerous criteria.[3]

Thereafter, Cooley notified the Council that it was implementing its plans to operate new two-year campuses at Oakland and Grand Rapids, later submitted new applications seeking to operate a full three-year branch campus at each location, and ultimately initiated an action against the ABA in the United States District Court for the Western District of Michigan, seeking to enjoin the ABA from imposing sanctions against Cooley and to require it to expeditiously process Cooley's applications for branch campuses.

In August 2004, the Council found that Cooley had improperly operated satellite programs without the Council's prior acquiescence and, as a sanction, declared that Cooley was ineligible to operate satellite or branch campuses until August 2006.

---

[2] The facts stated herein are supported by Cooley's Verified Complaint and the declaration attached to this memorandum.

[3] Actually, the action letter by which the Council formally denied Cooley's application was dated the day after the new Interpretations became effective. At no time did the Council, its Accreditation Committee or its site evaluation team determine that Cooley's proposed programs did not comply with the substantive requirements set forth in the new Interpretations.

The Council declined to act on Cooley's then-pending branch applications, concluding that it lacked sufficient information to make a decision that could not be implemented until 2006.[4] Instead, the Council informed Cooley that it could submit new applications for branch campuses in the summer of 2005, for operations to begin after July 31, 2006.

In accordance with the Council's directions, Cooley, on June 22, 2005, submitted applications to operate branch campuses at Oakland and Grand Rapids beginning in September 2006. By letter dated September 21, 2005, the Consultant identified the members of the site evaluation team for the October 20-21, 2005 visit, which was to review Cooley's proposed programs at the Oakland and Grand Rapids campuses. In a letter dated September 23, 2005, the Consultant identified the members of Cooley's sabbatical site visit team, which was scheduled to conduct its evaluation on October 16-19, 2005.[5]

As noted, Cooley's problems during the 2002-03 proceedings regarding Cooley's original application had been caused in large part by unexplained departures from

---

[4] In June 2005, the District Court, on the ABA's motion for summary judgment, dismissed Cooley's common-law due process claim that the Council had acted arbitrarily and capriciously and contrary to its own rules in denying Cooley's applications and imposing sanctions. Cooley's appeal from that decision is now pending before the Sixth Circuit, which has, at Cooley's request, stayed the district court's judgment, enjoined the ABA from imposing a public censure as part of the sanction imposed against Cooley, and expedited briefing and argument on Cooley's appeal.

[5] Each ABA-approved law school is reviewed every seven years. The Council and the Consultant had previously informed Cooley that the site inspection for Cooley's new branch-campus applications would be conducted in conjunction with its sabbatical review, which was scheduled for the fall of 2005.

the Council's directives, policies and procedures. For further example, Cooley had submitted a two-year campus proposal, as the Council had authorized it to do, only to have the Consultant and the Accreditation Committee refuse to consider that proposal as submitted.

In mid-October 2005, Cooley began to experience irregularities in the processing of its new applications similar to those that side-tracked its earlier applications. Prior to the branch-campus site-inspection team's arrival, the chair of the team informed Cooley that the Consultant's Office had not provided the team with copies of Cooley's branch-campus applications, and that the Consultant had ordered him and his team not to inspect or report on those applications, which Cooley had filed in accordance with the Council's directions. The Consultant's Office subsequently confirmed that the site evaluation team had been directed not to inspect or report on Cooley's branch-campus applications.

The Council and the Consultant have thus failed and refused to process Cooley's branch applications in accordance with their own prescribed instructions and procedures. By failing to follow through on the Council's commitment to process Cooley's new branch-campus applications in conjunction with its sabbatical review, defendants are once again leading Cooley into a labyrinthine process from which it will be unable to escape with approved branch programs. As shown below, any further delay will irreparably harm Cooley and prevent it from effectively recruiting 2006 fall classes for the branch campuses.

026151.00601/35703544v.3

ARGUMENT

The law governing preliminary injunctions in this circuit is familiar and well established:

> In considering whether to grant preliminary injunctive relief, the court must consider whether: (1) the party seeking the injunction has a substantial likelihood of success on the merits; (2) the party seeking the injunction will be irreparably injured if relief is withheld; (3) an injunction will not substantially harm other parties; and (4) an injunction would further the public interest….The test is a flexible one. If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.…[I]njunctive relief may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury.

*CSX Transp. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005) (internal citations and quotation marks omitted). As shown below, all of the relevant factors support the issuance of a preliminary injunction here.

## I.    Cooley Is Likely to Prevail on the Merits.

There can be no question but that the Council has unreasonably delayed action on Cooley's pending applications to establish branch campuses at Oakland and Grand Rapids.

The Council's Rules of Procedure contemplate that an application for the establishment of a new branch campus will be processed for consideration by the Council within 120 days after it is submitted: "A law school's application for acquiescence [in, among other things, the establishment of a branch campus] must be submitted to the Consultant's office at least 120 days prior to a scheduled meeting of the Accreditation Committee in order for the proposal to be considered

by the Committee at that meeting." Council Rules of Procedure § 18(c).[6] The

Council's Rules further envision that the site evaluation "team shall promptly

submit its report to the Consultant" *id.* § 18(i), and that the Consultant shall

forward the report to the school for comment at least 45 days prior to the

Accreditation Committee meeting, *id.* (providing 30 days for the school to submit its

comments on the site evaluation report, which comments must be received by the

Consultant at least 15 days prior to the date of the meeting).

   Cooley submitted its applications on June 22, 2005, giving the Council 211 days

in which to process the applications before the Accreditation Committee's scheduled

January 19-21, 2006 meeting. After being considered by the Accreditation

Committee at its January 2006 meeting, the applications would have been ripe for

consideration by the Council at its scheduled February 11-12, 2006 meeting. At the

time Cooley filed this Motion for a Preliminary Injunction, 169 days had elapsed

since Cooley submitted its applications and the Council had not completed the first

step in the review process—an inspection based on those applications. The team

that the Consultant initially appointed to perform that inspection was subsequently

directed not to inspect or report on Cooley's branch-campus applications. Neither

the Consultant nor the Council has explained why the necessary inspection was not

permitted to go forward as scheduled. Under the Council's rules, the site evaluation

reports should have been submitted to Cooley for comments no later than December

5, 2005, if Cooley's applications are to be considered at the Accreditation

---

   [6] A copy of the relevant Council Rules of Procedure is attached to this

Committee's January 19-21 meeting. At this point, it is obvious that the Council has

not followed its own rules and has unduly delayed Cooley's applications.

The D.C. Circuit first announced the standard for reviewing the decisions of

accrediting agencies in *Marjorie Webster Junior College, Inc. v. Middle States Ass'n*

*of Colleges & Secondary Schools*, 432 F.2d 650 (D.C. Cir. 1970):

> The increasing importance of private associations in the affairs of
> individuals and organizations has led to substantial expansion of judicial
> control over "The Internal Affairs of Associations not for Profit." [This is the
> title of Professor Chafee's germinal articles published in 43 Harv. L. Rev.
> 992, 1023 (1930).] Where membership in, or certification by, such an
> association is a virtual prerequisite to the practice of a given profession,
> courts have scrutinized the standards and procedures employed by the
> association notwithstanding their recognition of the fact that professional
> societies possess a specialized competence in evaluating the qualifications of
> an individual to engage in professional activities. …The standards set must
> be reasonable, applied with an even hand, and not in conflict with the public
> policy of the jurisdiction.…Even where less than complete exclusion from
> practice is involved, deprivation of substantial economic or professional
> advantages will often be sufficient to warrant judicial action.

432 F.2d at 655 (footnotes and citations omitted). The law is more well developed in

other circuits, where such accreditation decisions are uniformly reviewed under a

deferential standard analogous to judicial review of an administrative agency's

decision. *See, e.g., Foundation for Interior Design Educ. Research v. Savannah*

*College of Art & Design*, 244 F.3d 521, 528 (6th Cir. 2001); *Chicago School of*

*Automatic Transmissions v. Accreditation Alliance of Career Schools & Colleges*, 44

F.3d 447 (7th Cir. 1994). Although the review is deferential, it includes an inquiry

whether the accrediting body followed its own rules. *Id.*, 44 F.3d at 450-51. *See also*

*Western State Univ. of Southern California v. American Bar Ass'n.*, 301 F. Supp. 2d

---

memorandum.

1129 (C.D. Cal. 2004) (issuing a preliminary injunction to prevent irreparable injury caused by the ABA Council's failure to follow its own rules). *Cf. Int'l Fabricare Inst. v. EPA*, 972 F.2d 384, 396 (D.C. Cir. 1992) (an agency must adhere to its own procedural rules).

Here, the Council's rules contemplate that applications like those submitted by Cooley on June 22, 2005, will be processed so as to be ready for consideration by the Accreditation Committee within 120 days. Here, more than 168 days have elapsed, and the Council has yet to take the first step in the evaluation process: an inspection based on Cooley's branch-campus applications. Thus the Council's failure to comply with its own rules in processing Cooley's applications could not be more obvious.

## II.    Cooley Will Be Irreparably Injured if the Council Is Not Forced to Process Cooley's Applications in Accordance with the Council's Own Rules.

The Council has already delayed Cooley's plans to expand its law school operations to Oakland and Grand Rapids by almost four years—from February 2003 until September 2006. Whether the Council was justified in imposing that delay is a question now before the Sixth Circuit in Cooley's previous lawsuit. There can be no doubt, however, that any further delay is unwarranted unless the Council, observing its prescribed procedures, properly concludes that Cooley's current branch-campus applications fail to meet the prescribed standards for operating branch or satellite campuses.

The existing delay <u>is</u> relevant, however, in assessing the irreparable nature of the injury that would be caused by further delay. As the Council insisted during its

processing of Cooley's previous applications, Cooley has already (a) acquired, expanded or constructed the physical facilities necessary to operate its proposed branches; (b) hired the faculty and staff for the branch campuses; (c) purchased two complete law school libraries; and (d) otherwise prepared the proposed campuses for inspection by a site evaluation team. The previous and on-going costs of acquiring and maintaining these facilities and personnel, which already amount to millions of dollars, are unrecoverable and thus irreparable.

More important, the Council's delay seriously hampers Cooley's ability to recruit, process and enroll students (and collect tuitions and fees) for its new branch campuses. If, as expected, the Council approves Cooley's applications to begin branch-campus operations in September 2006, Cooley will, as the applications themselves specify, need to recruit approximately 160 students to meet its enrollment and budget projections. If Cooley is to recruit these students, it must begin as soon as possible. Any delay beyond February 2006 will severely limit Cooley's ability to meet its enrollment and budget projections. This disruption of Cooley's ability to recruit an entering class represents irreparable injury. *Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001).

### III.    The Requested Preliminary Injunction Will Not Harm Other Parties.

Neither the ABA nor its Council will be harmed by the Court's insistence on the Council's processing Cooley's applications in accordance with the Council's own rules and procedures. Indeed, if the Council had simply followed through with the process that it initiated in September and permitted the appointed site evaluation team to review and report on Cooley's proposed branch-campus operations, Cooley's

applications would be on schedule for consideration by the Accreditation Committee at its January 2006 meeting, and no injunction would be necessary. Any inconvenience caused by the current need to expedite the Council's processes to make up for lost time is of the Council's own making.

## IV.    The Requested Injunction Will Further the Public Interest.

As quasi-public entities, accreditation bodies serve the public interest by doing their job in accordance with prescribed procedures and standards. The requested injunction would thus serve the public interest by forcing the Council, which acts as the United States Department of Education's surrogate for accrediting law schools, to carry out its accreditation function in accordance with its own prescribed procedures and standards. In addition, the injunction would serve the interests of students in the Oakland and Grand Rapids areas who will be able to start or complete their legal educations at Cooley's new campuses.

11

CONCLUSION

For the foregoing reasons, the Court should grant Cooley's motion for a

preliminary injunction and direct the Council to take whatever action is necessary,

consistent with Cooley's status as a fully approved law school that is in compliance

with all current ABA Standards and Interpretations, for the Council to be in a

position to make a reasoned, fully informed decision on the merits of those

applications at its February 2006 meeting.

Respectfully submitted,


/s/ ALEX BLANTON
Alex Blanton, D.C. Bar No. 169623
Michael L. Cioffi
BLANK ROME, LLP
  600 New Hampshire Ave., NW
  Washington, D.C. 20037
  202-772-5909
  Fax: 202-572-8357
  Email: Blanton@BlankRome.com

*Counsel for plaintiff Thomas M. Cooley Law*
*School*