## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS M. COOLEY LAW SCHOOL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNCIL OF THE SECTION OF LEGAL | ) | Civil Action No. 05cv2317 (RJL) |
| EDUCATION AND ADMISSIONS TO | ) | |
| THE BAR OF THE AMERICAN BAR | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM OF POINTS AND
### AUTHORITIES IN OPPOSITION TO PLAINTIFF'S
### MOTION FOR PRELIMINARY INJUNCTION

### INTRODUCTION

The complaint and preliminary injunction motion filed by the Thomas M. Cooley Law

School ("Cooley") challenging the timing of the American Bar Association's ("ABA")

consideration of Cooley's applications for the ABA's acquiescence in the opening of two branch

campuses improperly seek to relitigate issues Cooley has already sued upon and lost. *Thomas M.*

*Cooley Law School v. The American Bar Association*, 376 F. Supp. 2d 758 (W.D. Mich. 2005),

*appeal pending* No. 05-1891 (6th Cir.) (the "Michigan Action") (opinion attached as Exhibit 1

hereto). The Michigan district court's entry of summary judgment against Cooley on its due

process claims has been appealed by Cooley, and the appeal is fully briefed and awaiting the

scheduling of oral argument. Notwithstanding Cooley's allegation that the issues raised in the

instant lawsuit are entirely new (Complaint, ¶26), in fact Cooley's amended complaint in the

Michigan Action alleged that a due process violation resulted from an August 2004 letter from the Council of the ABA's Section of Legal Education and Admissions to the Bar (the "Council") that established precisely the same schedule for consideration of Cooley's applications that Cooley challenges again here. The Michigan district court specifically rejected Cooley's due process claim, finding that "the Council's decision to defer action until the Spring of 2006 ... is adequately explained and makes eminent sense." 376 F. Supp. 2d at 773. Accordingly, as further discussed below, the doctrines of claim preclusion and issue preclusion bar the relief requested by Cooley here.

In addition, even if Cooley had not already litigated and lost this issue, Cooley has not come close to demonstrating that the extraordinary relief it requests here is warranted. Cooley has no due process right to have its applications considered in January rather than in April, and the Standards and Rules that govern the ABA's accreditation processes do not support the strained interpretation Cooley seeks to give them. Contrary to Cooley's Memorandum, the ABA's Rules do not require that the applications be considered within any particular number of days after submission, and instead set only minimum, not maximum, review periods. Significantly, the ABA's review of Cooley's applications is on track with the schedule previously outlined to Cooley by the ABA in August 2004 and again in June 2005, with two site evaluation teams appointed by the ABA currently in the process of preparing reports that will be used in evaluating Cooley's applications. *See* Declaration of John A. Sebert ("Sebert Dec."), attached hereto as Exhibit 2.

Moreover, the only injury Cooley points to – monetary investments in facilities and faculty and lost tuition and fees from prospective students – are entirely compensable with money damages and, in any event, are not shown to arise from waiting three more months for

consideration of its applications. Finally, Cooley's requested relief – an order directing the ABA to shorten the period for consideration of Cooley's applications – would harm the ABA, others, and the public interest, by interfering with the accreditation process that the ABA, exercising its expertise, has deemed appropriate under the particular circumstances presented.

In short, Cooley has not and cannot demonstrate a likelihood of success on the merits of its claim for injunctive relief, irreparable harm, or any of the other elements necessary for the court to award the mandatory injunctive relief requested. Cooley's motion for preliminary injunction should be denied.

## STATEMENT OF FACTS

**The ABA Accredits Law Schools**

A law school's decision to seek ABA accreditation is voluntary. The ABA's accreditation decisions provide information about the quality and choices available in law school education, so that current and prospective law students, as well as the public that uses the services of law school graduates, can make better-informed decisions. (*See* Sebert Dec. ¶ 4).

The accreditation process includes both the approval of law schools and the acquiescence in major changes sought by approved law schools. (Sebert Dec. ¶ 4.) Accreditation decisions are made by the Council. (Sebert Dec. ¶ 11.) The Council makes decisions regarding accreditation and acquiescence following a review and recommendation by the Section's Accreditation Committee. (*Id.*) The process is governed by written Standards, Interpretations and Rules of Procedure ("Rules") that are adopted by the Council after public review and comment and are concurred in by the ABA House of Delegates (the "House"). (*See* Standards for the Approval of Law Schools ("Standards"); Rules of Procedure for the Approval of Law Schools ("Rules") (Exhibits 3 and 4 hereto)). The Standards include Interpretations and together

3

describe the requirements that a law school must meet to obtain and retain ABA approval (Sebert Dec. ¶ 5), and the Rules implement the Standards. (*Id.* at ¶ 6)

**The Requirement of Obtaining Prior Acquiescence Before a Major Change**

Standard 105 states that: "Before a law school makes a major change in its program of legal education or organizational structure, it shall obtain the acquiescence of the Council for the change." (*See id.*, Standard 105.) The requirement of prior acquiescence contained in the first sentence of Standard 105 has been in effect continuously from well before 2000 to the present. (*See* Sebert Dec. ¶ 9). Major changes requiring prior acquiescence include the opening of branch or satellite campuses, such as the branch campuses Cooley seeks to open. (*See* Exhibit 3, Interpretation 105-1(13)).[1]

The Standards and Rules govern the procedure for considering a school's request for prior acquiescence in the opening of branch or satellite campuses. (*See* Sebert Dec. ¶ 12). First, a school must apply for prior acquiescence. (Exhibit 4, Rule 18(a)). Next, the ABA appoints a fact-finding committee that conducts a site visit at the school. (*Id.*, Rule 18(f)-(g)). After this visit, the fact-finding team prepares and issues a report, which is sent to the school for comment. (*Id.*, Rule 18(h)-(i)). This report, along with the school's comment on the report and applications itself, is then provided to the Accreditation Committee. (*Id.*, Rule 18(j), (*l*)). The Accreditation Committee then considers the application at a meeting and makes a recommendation to the Council on the application. (*Id.*, Rule 18(o)). This recommendation is considered by the Council, which also receives the application, the report by the fact-finding team, and the school's

---

[1] A "Branch campus" is a "separate location at which a law school offers sufficient courses that a student could earn at the separate location all of the credit hours that a law school requires for the J.D. degree," while a "Satellite campus" is a "separate location ... at which a law student could take the equivalent of 16 or more semester credit hours toward the law school's J.D. degree but which does not constitute a Branch campus." (Exhibit 3, Standard 106(13)-(14)).

4

comments on the report. (*Id.*, Rule 18(r)-(s)). The Council makes the final determination

regarding the application for prior acquiescence. (*See* Sebert Dec. ¶ 12).

**Cooley's 2002-2003 Applications for Prior Acquiescence[2]**

In 2002, Cooley submitted applications requesting prior acquiescence in the

establishment of two satellite campuses, one in Oakland County, Michigan, and one in Grand

Rapids, Michigan.[3] (Sebert Dec. ¶ 15). After the Council denied acquiescence in the Oakland

satellite, and before the Council even considered Cooley's application for acquiescence in the

Grand Rapids satellite, Cooley advised the ABA that Cooley would nonetheless commence

satellite programs immediately in Oakland and Grand Rapids, and would open a branch campus

(*i.e.*, a school where students could complete all of the education for a juris doctor degree) in

Oakland beginning sometime in February 2003. (*Id.* ¶¶ 15-19, 21-22). The ABA promptly

notified Cooley that these actions would violate the requirement of prior acquiescence set forth

in Standard 105 and could subject Cooley to sanctions. (*Id.* ¶ 23). Despite the ABA's warnings,

Cooley proceeded to open and operate unauthorized, unapproved satellite law school campuses

at Oakland and Grand Rapids, and to enroll and obtain tuition payments from students attending

these facilities.

---

[2] Many of the factual allegations of the Complaint herein are simply adopted from Cooley's complaints in the Michigan Action and formed the basis for the due process claim rejected by the Michigan district court.

[3] The Accreditation Committee and Council reviews were conducted in accordance with the Standards and Rules that were then in effect, which did not include certain proposed Interpretations that had not yet been approved regarding satellite campuses. (*See* Sebert Dec. ¶ 19). These proposed Interpretations were not finalized and did not become effective until they were concurred in by the House at its February 10, 2003 meeting, which took place after the Council meeting on February 8-9, 2003. (*Id.*) Neither John Sebert, the Consultant on Legal Education to the ABA ("Consultant"), nor anyone from the Consultant's office represented to Cooley that its application would be evaluated based on proposed Interpretations that had not yet

*(Footnote continued)*

In November, 2003, the Accreditation Committee requested that Cooley appear before the Committee to show cause why Cooley should not be sanctioned for its failure to comply with the Standards and Rules. (*Id.* ¶ 27).

**Cooley's First Legal Action**

Shortly before the Accreditation Committee was scheduled to hold the show cause hearing, on March 30, 2004, Cooley filed the Michigan Action against the ABA and the Consultant. *See Thomas M. Cooley Law School v. American Bar Association*, 376 F. Supp. 2d 758, 762 (W.D. Mich. 2005).

On April 16, 2004, the district court held a hearing on Cooley's motion for preliminary injunction. *See id.* Cooley agreed to reduce its programs at Oakland and Grand Rapids "effective immediately" so that no student could earn more than 15 credit hours at either campus (the maximum permitted unless a school has obtained prior acquiescence). (*See* Sebert Dec. ¶ 31). Cooley further agreed that it would not expand the programs without prior acquiescence. *Cooley*, 376 F. Supp. 2d at 762. The ABA agreed that the Accreditation Committee and Council would hold the show cause hearing and consider Cooley's pending applications for acquiescence at the Committee's June 2004 and the Council's August 2004 meetings. (*See* Sebert Dec. ¶ 32). In the meantime, the Michigan Action was stayed. *Cooley*, 376 F. Supp. 2d at 763.

In June 2004, the Accreditation Committee held the show cause hearing and considered Cooley's applications. *Id.* The Committee recommended to the Council that it deny prior acquiescence in the Oakland and Grand Rapids satellite campuses and that sanctions be imposed on Cooley. *Id.*

---

become effective. (*Id.* ¶ 20). To the contrary, the Consultant explained to Cooley that the *existing* Standards and Rules were being used to evaluate its application. (*Id.*)

On August 5, 2004, the Council held hearings on the sanctions recommendation and the recommendation that Cooley's applications for prior acquiescence be denied. *Id.* The Council issued its decision in two letters dated August 17, 2004. (*See* Sebert Dec. ¶ 34). The Council imposed sanctions on Cooley, censuring Cooley and prohibiting Cooley from operating satellite or branch campuses prior to July 31, 2006. (*See id.*) Regarding Cooley's applications for prior acquiescence, the Council declined to act on those applications because – given that Cooley could not operate a satellite or branch campus until after July 31, 2006 – the information provided in Cooley's then-pending applications "do[es] not provide the Council with sufficient information upon which the Council can rely in making a decision that will not become applicable until 2006." (August 17, 2004 letter, Exhibit 5 hereto, p. 2).

The Council's August 17, 2004 letter set forth the time frame for Cooley to submit new applications for prior acquiescence to operate branch or satellite campuses after the sanctions period expired on July 31, 2006. (*See id.* ¶ 35). Specifically, the Council noted that "Cooley is scheduled for its next sabbatical site evaluation in the fall of 2005, and it is anticipated that the site evaluation report will be before the Accreditation Committee *in the spring of 2006.*" (Exhibit 5, p. 2 (emphasis added)). Sabbatical site evaluations are regularly scheduled assessments, every seven years, of ABA-approved law schools that allow the ABA to monitor the adherence of schools to the Standards and Interpretations. (*See* Sebert Dec. ¶ 35). In light of the fact that Cooley was scheduled for a sabbatical site inspection, which would provide additional information regarding Cooley's educational programs, the Council established the following schedule for Cooley to submit new applications for acquiescence:

> Cooley may file in the summer or fall of 2005 a new application for acquiescence in the establishment of one or more satellite or branch campuses, to be operated after July 31, 2006. The sabbatical site evaluation report will then provide the Committee and the Council current information as to whether, at that time,

7

> Cooley is in full compliance with the Standards and Rules. The fact-finding
> reports prepared in connection with the new applications for acquiescence, in
> combination with the sabbatical site evaluation report, will then provide the basis
> for determining whether, at that time, Cooley satisfies the criteria for
> acquiescence in the establishment of satellite or branch campuses that are set forth
> in the applicable Standards and Rules.

(*See id*; *see also* Exhibit 5, p. 2, ¶ 4). The schedule established by the Council provided that

Cooley's new applications would be evaluated in a time frame that would allow the Council to

consider them "in combination with" the sabbatical site report on Cooley, which was due to be

presented to the Accreditation Committee in the spring of 2006. Therefore, Cooley has been on

notice since at least August 17, 2004 that Cooley's future applications for prior acquiescence

would not be considered until Spring 2006. (*See* Sebert Dec. ¶ 35).

Following the Council's August 17, 2004 decisions imposing sanctions and denying

acquiescence in Cooley's applications, on August 26, 2004, Cooley sought to lift the stay in the

Michigan Action and filed an amended complaint, claiming that all of the ABA's actions in

response to Cooley's applications were improper. (*See* Sebert Dec. ¶ 36). Among other claims,

the amended complaint asserted a claim against the ABA for violation of Cooley's common law

due process rights with regard to Cooley's applications for prior acquiescence. *Cooley*, 376 F.

Supp. 2d at 763. Specifically, Cooley claimed that the Council's August 17, 2004 decisions –

including the letter establishing the schedule for consideration of Cooley's new applications –

violated due process. (First Amended Verified Complaint, ¶¶ 111-12, 123-30, and Count I

Prayer for Relief (Exhibit 6 hereto).

The ABA and Cooley filed cross motions for summary judgment on Cooley's claim for

violation of due process, and the ABA moved for dismissal of all other counts in the amended

complaint. 376 F. Supp. 2d. at 760. Following "voluminous briefing" (*id.*), the district court

concluded that the ABA was "entitled to judgment as a matter of law, upholding *all of its*

*decisions* over Cooley's challenge," and granted summary judgment for the ABA on Cooley's due process claim and dismissed Cooley's other claims. *Id.* at 775 (emphasis added).

The district court concluded that as a matter of law the ABA's actions in response to Cooley's applications for prior acquiescence did not violate Cooley's due process rights. *Id.* In particular, the court quoted at length from the August 17, 2004 letter from the ABA to Cooley, which established the schedule for consideration of future applications from Cooley. *Id.* at 771-72. The court concluded that "the Council's decision to defer action until *the Spring of 2006*, when it would have the benefit of Cooley's next Fall 2005 sabbatical site evaluation report, is adequately explained and makes eminent sense. Then, *in closer proximity to the Fall of 2006*, when Cooley would next be eligible to operate the satellite campuses, the Council would be able to assess then-current information." *Id.* at 773 (emphasis added). Thus, the district court approved the ABA's decision that Cooley's future applications would be acted on in *Spring 2006* with an eye toward Cooley operating satellite or branch campuses in Fall 2006. *Id.*

Cooley has appealed the district court's decision to the United States Court of Appeals for the Sixth Circuit. (*See* Sebert Dec. ¶ 39 and Exhibit 7 hereto). The parties have completed briefing on Cooley's appeal and the appeal is currently awaiting the scheduling of oral argument. (*See* Sebert Dec. ¶ 39).

**Cooley's 2005 Applications for Prior Acquiescence**

In May 2005, Cooley informed the ABA Consultant that Cooley intended to file new applications for prior acquiescence in the opening of branch campuses in Oakland and Grand Rapids. (*See* Sebert Dec. ¶ 40). Cooley requested guidance concerning the procedures applicable to these applications. (*See id.*).

The ABA Consultant responded to Cooley's request via letter dated June 9, 2005. ((*See id.* ¶ 41; *see also* Exhibit 8 hereto). In that letter, the Consultant detailed the procedures and timeframe for consideration of Cooley's applications for prior acquiescence. The Consultant notified Cooley that the ABA was in the process of appointing a fact-finding team to undertake a site evaluation and provide a report to the Accreditation Committee and the Council. (Exhibit 8, p. 1). The Consultant informed Cooley, consistent with the ABA's August 17, 2004 letter to Cooley, that "we plan to schedule the fact-finding and [Cooley's regularly scheduled] sabbatical site evaluation so that the reports of both visits will be considered by the Accreditation Committee *at its April 2006 meeting.*" (*Id*). Thus, Cooley was again put on notice on June 9, 2005, that Cooley's new applications would be considered at the April 2006 Committee meeting.

Cooley did not object to this schedule after receiving the Consultant's letter. (Sebert Dec. ¶ 41.) Instead, Cooley submitted new applications on June 22, 2005 for prior acquiescence in the opening of branch campuses at Grand Rapids and Oakland. (*See* Sebert Dec. ¶ 42).

The ABA proceeded to appoint separate teams to conduct (a) Cooley's regularly scheduled sabbatical site visit (Sabbatical Team), and (b) fact-finding site evaluations (Fact-Finding Team). (*See id.* ¶ 43). In compiling these teams, the ABA endeavored to include a practicing lawyer or judge on the sabbatical team. (*See id.* ¶ 45). As was explained in a memorandum from the ABA to Cooley's dean, "[i]n spite of diligent efforts [the ABA has] not been able to add a practicing lawyer or judge to the Thomas Cooley [Sabbatical] team." (Exhibit 9 hereto, p. 1).

The Fact-Finding Team was provided written material in advance of its site visit. (*See* Sebert Dec. ¶ 46). Contrary to Cooley's allegations (Complaint, ¶ 35), this material included the applications for prior acquiescence that Cooley filed in June 2005. (*See* Sebert Dec. ¶ 46;

Declaration of Thomas F. Guernsey ("Guernsey Dec.") (Exhibit 10 hereto), ¶ 4). In accordance with normal practice, the team also received copies of its applications for acquiescence in the establishment of branch campuses and the "major change questionnaire" that accompanied those applications. (*Id.*) The Fact-Finding Team conducted its site visit at Cooley on October 20-21, 2005. (*See* Sebert Dec. ¶ 47). The ABA instructed the Fact-Finding Team to consider and report on the facts regarding the Grand Rapids and Oakland locations. (*See id.*). Contrary to what Cooley alleges in its Complaint in this action (Complaint, ¶¶ 35-37), the ABA never instructed the Fact-Finding Team to refrain from considering or reporting on Cooley's branch campus applications. (*See* Sebert Dec. ¶ 47; Guernsey Dec. ¶ 6).

The Fact-Finding Team is currently drafting a report of facts gathered during its visit to Oakland and Grand Rapids. (*See* Sebert Dec. ¶ 48; Guernsey Dec. ¶ 9). The report is not expected to be completed before January 2006. (*See* Sebert Dec. ¶ 49; Guernsey Dec. ¶ 9). The report will then be sent to Cooley for its comment. (*See* Sebert Dec. ¶ 49). After receiving Cooley's comments, the report and Cooley's applications for prior acquiescence will be considered at the Accreditation Committee's April 2006 meeting, as was explained to Cooley in the ABA's August 17, 2004 and June 9, 2005 letters. (*See id.*). The report from the Sabbatical Team, which is also currently being drafted and is not expected to be completed before January, is also scheduled to be considered by the Accreditation Committee at its April 2006 meeting. (*See* Sebert Dec. ¶ 50; Guernsey Dec. ¶ 10).

After its April 2006 meeting, the Committee will issue recommendations on Cooley's applications for prior acquiescence. (*See* Sebert Dec. ¶ 51). Those recommendations will be considered by the Council at its June 2006 meeting. (*See id.*). This time frame is exactly as communicated to Cooley on August 17, 2004 and June 9, 2005. (*See id.*).

Although Cooley's Complaint suggests that Cooley's applications for prior acquiescence should be considered at the January 2006 Accreditation Committee meeting,[4] that is inconsistent with the time frame previously communicated to Cooley. (*See id.* ¶ 52). The ABA initially prepared agendas for the January and April 2006 Committee meetings in August 2005. (*See id.*). At that time, Cooley's applications for prior acquiescence were placed on the April 2006 agenda, while other accreditation requests for which reports would be completed earlier were set on the January 2006 agenda. (*See id.*). On December 7, 2005, the ABA finalized the agenda for the January 2006 Committee meeting. (*See id.*).

The January 2006 Accreditation Committee agenda is already full. (*See id.* ¶ 53). There are three matters to be considered at that meeting that involve appearances by school representatives, including one application for full approval of a law school and two applications for provisional approval of new law schools. (*See id.*). The January agenda also includes consideration of four sabbatical site evaluation reports (all of which have been received and sent to schools for their response) and fourteen other matters. (*See id.*). The reports for all of the applications have already been provided to the ABA, unlike the reports from the Fact-Finding Team and the Sabbatical Team regarding Cooley. (*See id.*).[5]

---

[4] Cooley's Complaint suggests Cooley is entitled to have its applications considered at the January 2006 Committee meeting because Cooley filed those applications more than 120 days prior to that meeting. Cooley's suggestion is based on a misunderstanding of the Rules. Rule 18(c) states that a "law school's application for acquiescence must be submitted to the Consultant's office at least 120 days prior to a scheduled meeting of the Accreditation Committee in order for the proposal to be considered by the Committee at that meeting." Exhibit 4, Rule 18(c). This Rule provides a *minimum* amount of time that a school must allow before the Committee will consider an application. This Rule does not establish a *maximum* amount of time that can transpire between the applications and the Committee's consideration of the application.

[5] The agenda for the Committee's meetings regarding applications for prior acquiescence is prepared by the Consultant's office, and final approval rests with the Chair of the Accreditation Committee. (*See* Sebert Dec. ¶ 13). The Council – against whom injunctive relief is sought –
*(Footnote continued)*

In addition to the January 2006 Accreditation Committee's agenda already being full, there is not enough time to process the reports from the Fact-Finding Team and the Sabbatical Team before the January 2006 Committee meeting. (*See id.* ¶ 54). The members of the two teams are law school deans, associate deans and librarians, who are unpaid volunteers, not employees of the ABA. (*See id.* ¶ 44). Even if the Sabbatical Team and the Fact-Finding Team could provide their reports to the ABA today (which they cannot), the ABA would need a minimum of six weeks before those reports would be ready for review by the Accreditation Committee. (*See id.* at ¶ 54). Upon receipt of site visit reports, the Consultant reviews the reports for completeness, after which the ABA's General Counsel reviews the reports. (*See id.*). These internal ABA processes take a minimum of two weeks. (*See id.*). The reports are then provided to the applicant schools for review and comment. (*See id.*). In the case of a sabbatical visit report, the school must be provided a minimum of 30 days to review and comment on the report. (Exhibit 4, Rule 2(e)). These 30 days plus the two weeks for internal ABA review fall well past the Committee's January 19-21, 2006 meeting. (*See* Sebert Dec. ¶ 54). In addition, the reports, the school's comments, and other materials are provided in advance of the meeting to a member of the Committee ("the monitor")who is responsible for preparing draft decision or recommendation letters that are circulated to all members of the Committee approximately two weeks prior to the meeting. Such materials for the January 2006 meeting have already been

does not control the Committee's agenda. The agendas for the Committee meetings are typically set many months in advance of the meetings. (*See id.*). The Accreditation Committee typically holds four regular meetings per year, in January, April, June and late October or early November. (*See id.* ¶ 14). The Committee also holds a retreat in early October and sometimes holds meetings during portions of that retreat. (*See id.*). The Council typically meets four times per year, in February, June, August and December. (*See id.*)

distributed to Committee monitors so that they may prepare their drafts for distribution to the Committee early in January.

ARGUMENT

I.    THE MICHIGAN ACTION BARS COOLEY'S CURRENT LAWSUIT.

A.    <u>The Doctrines of Claim and Issue Preclusion Bar Cooley's Claims.</u>

The final judgment entered by the Michigan district court in favor of the ABA and against Cooley, and the court's findings of fact and conclusions of law that "the Council's decision to defer action [on Cooley's new applications] until the Spring of 2006 . . . is adequately explained and makes eminent sense" and did not violate due process (376 F. Supp. 2d at 773), are binding on Cooley and preclude it from relitigating these issues in this Court.

The doctrines of claim preclusion (also known as res judicata) and issue preclusion (also known as collateral estoppel) operate to conserve judicial resources, avoid successive inconsistent judgments, and prevent forum shopping, once a litigant has had a full and fair opportunity to establish any claims. *Otherson v. Dep't of Justice, INS*, 711 F.2d 267, 273 (D.C. Cir. 1983) ("[A] party who has had one fair and full opportunity to prove a claim and has failed in that effort should not be permitted to go to trial on the merits of that claim a second time.") (quoting *Blonder-Tongue Labs., Inc., v. Univ. of Ill. Found.*, 402 U.S. 313, 324-35 (1971)); *Montana v. United States*, 440 U.S. 147 973-74 (1979); *Role Models America, Inc. v. Penmar Dev. Corp.*, 394 F. Supp. 2d 121, 12829 (D.D.C. 2005). Claim preclusion bars a party to an earlier cause of action from bringing further claims that the party had an opportunity to litigate in the previous action, regardless of whether the party took advantage of that opportunity. *Montana*, 440 U.S. at 153; *Role Models*, 394 F. Supp. 2d at 128-29. Issue preclusion gives binding effect to a court's findings of fact and conclusions of law resolved in an earlier

14

proceeding. *Montana*, 440 U.S. at 153; *Nat'l Treasury Employees Union v. I.R.S.*, 765 F.2d 1174, 1176 (D.C. Cir. 1985); *Martin v. Malhoyt*, 830 F.2d 237, 264 (D.C. Cir. 1987). Issue preclusion applies even when the second lawsuit is based on an entirely different cause of action as long as the issue was decided in the prior litigation. *Montana*, 440 U.S. at 153.

Cooley's lawsuit in this court is barred by both doctrines. There is no dispute that the Michigan Action brought by Cooley involved the same parties as this action[6] and that the district court issued a final judgment in favor of the ABA on Cooley's common law due process claim. Accordingly, Cooley is barred by the doctrine of claim preclusion from relitigating its due process claim in this action.[7]

Cooley also is barred by the doctrine of issue preclusion from relitigating whether the Council's August 2004 letter complied with due process. The issues relating to the timing of the Council's consideration of Cooley's applications were fully litigated by Cooley and the ABA and decided by the court in the Michigan Action. Both Cooley and the ABA cross-moved for

_____

[6] Cooley is the plaintiff and the ABA is a defendant in both the Michigan Action and this action. The fact that the ABA's Consultant on Legal Education, John Sebert, also was a defendant to an unrelated claim in the Michigan lawsuit does not alter the claim or issue preclusive effect of the Michigan judgment as to Cooley. *Dreyfus v. First Nat'l Bank of Chicago*, 424 F.2d 1171, 1175 (7th Cir. 1970) (in the application of res judicata, "it is no objection that the former action included parties not joined in the present action, or vice versa, so long as the judgment was rendered on the merits, the cause of action was the same, and the party against whom the doctrine is asserted was a party to the former litigation."); *Garza v. Henderson*, 779 F.2d 390, 392-93 (7th Cir. 1985) (claim preclusion applies when the party against whom preclusion is asserted was a party to the earlier suit).

[7] Cooley's appeal of the district court's judgment does not change the fact that the district court entered a final judgment against Cooley. Cooley is barred under the doctrines of claim and issue preclusion from relitigating the issues subsumed within that judgment. *Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493 (D.C. Cir. 1983) ("Under well-settled federal law, the pendency of an appeal does not diminish the res judicata effect of a judgment rendered by a federal court."); *Martin*, 830 F.2d at 264 (same with respect to issue preclusion); *Southern Pacific Communications Co. v. American Tel. & Tel. Co.*, 740 F.2d 1011, 1018 (D.C. Cir. 1984); *Answering Serv., Inc. v. Egan*, 728 F.2d 1500, 1506 (D.C. Cir. 1983).

summary judgment on Cooley's due process claim that the Council's August 17, 2004 decision violated due process. Based on the administrative record of the ABA's review and the "voluminous briefing" and argument, the district court made specific factual findings that the schedule established by the Council, which called for Cooley's new applications to be reviewed in the Spring of 2006 in combination with the sabbatical site report, was "adequately explained and makes eminent sense." 376 F. Supp. 2d at 773. The district court further concluded as a matter of law that the schedule did not violate due process. *Id.* Cooley is bound by these findings of fact and conclusions of law and cannot relitigate them now.

In a vain attempt to divorce the issues in this case from those adjudicated in the Michigan Action, Cooley asserts that "this action involves new applications Cooley filed on June 22, 2005 in accordance with the ABA's instructions." (Complaint p. 2). However, the schedule under which the ABA would consider the "new applications" was established in the Council's August 17, 2004 decision. Cooley challenged that schedule on due process grounds in the Michigan lawsuit and lost, and it cannot now collaterally attack that judgment and decision in this action.[8]

Similarly, Cooley's repeated assertions that this case raises "entirely new issues" (Complaint ¶ 26) are inaccurate. The central issue framed by Cooley's complaint is whether it is entitled to have the ABA's Accreditation Committee and Council consider its applications in January and February 2006, respectively. The Council decided that issue in August 2004, when

---

[8] Indeed, Cooley's allegation that it filed its new applications "in accordance with the ABA's instructions" (Complaint p. 2) is a veiled reference to the Council's August 17, 2004 decision, which specified that Cooley could file new applications for branch or satellite campus approval "in the summer or fall of 2005" and that such applications would be evaluated in light of the sabbatical site inspection evaluation report that was expected to be before the Accreditation Committee in the Spring of 2006. (Ex. 5, p. 2). Cooley's attempt to pick and choose the portions of the Council's August 17, 2004 decision it relies on, such as the Council's statement that Cooley could file new applications, while ignoring the schedule set by the Council for considering those same applications, is incomplete and misleading

it established the schedule for Cooley's new applications to be reviewed in Spring 2006 in combination with the sabbatical site report. That schedule was upheld by the district court based on its full review of the administrative record and the parties' briefs and arguments. The only thing that is "new" about this case is the court to which Cooley has come to try and relitigate these issues. Under the well-established principles of claim and issue preclusion, Cooley is barred from relitigating the schedule set by the Council.

**B.      Cooley's Current Action Should Be Dismissed
         In Favor Of The Prior Duplicative Action Pending In Michigan.**

Cooley's claims are barred not only by principles of claim and issue preclusion, but by well-established rules against duplicative litigation in the federal courts. As the Eighth Circuit held in *Missouri v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952-54 (8th Cir. 2001), "[p]laintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time." *Accord Zerilli v. Evening News Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (upholding dismissal of duplicative action involving the same parties). Where, as here, a second federal action is initiated that involves the same claims and parties as a previously filed federal action, dismissal of the second-filed action is appropriate. *E.g., Curtis v. Citibank*, 226 F.3d 133, 138 (2d Cir. 2000).

Cooley thus may not circumvent the judicial process that Cooley itself instituted in Michigan, and has appealed to the Sixth Circuit. Accordingly, this Court should dismiss this suit in favor of the Michigan Action.

## II.      COOLEY IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

Even if Cooley's claims were properly before this Court, Cooley's request for a preliminary injunction should be denied. A preliminary injunction is an "an extraordinary and drastic remedy." *FTC v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C. Cir. 1980) (internal quotes

omitted); *see Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). The burden falls on Cooley

to demonstrate (i) "a substantial likelihood of success on the merits;" (ii) "that it would suffer

irreparable harm without injunctive relief;" (iii) "that an injunction would not substantially harm

other interested parties;" and (iv) "that issuance of the injunction is in the public interest."

*Cobell*, 391 F.3d at 258. In addition, where, as here, "a party seeks a mandatory injunction, *i.e.*,

to change the status quo rather than to preserve it, the moving party 'must meet a higher standard

than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or

very serious damage will result from the denial of the injunction.'" *Clarke v. Office of Federal

Housing Enterprise Oversight*, 355 F. Supp. 2d 56, 63 (D.D.C. 2004) (quoting *Columbia Hosp.

for Women Found. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d. 1, 4) (citation and internal

quotes omitted); *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 279 (D.D.C. 2005) (same).[9] Here,

none of these factors weigh in favor of a preliminary injunction, let alone meet the higher

standard applicable to mandatory injunctions. Indeed, the remedy sought – an order dictating the

timing of an accrediting body's review of a school's application – is unprecedented.[10] Cooley's

motion thus should be denied.

### A.    Cooley Has Not Established Any Likelihood of Success.

Cooley has no chance of success on its underlying due process claim. As discussed

above, the ABA's review of Cooley's applications is on track to be presented to the

---

[9] Cooley seeks a "mandatory injunction" because it requests an order directing the ABA and
Council to accelerate the previously-determined schedule for evaluating and deciding Cooley's
applications so as to take action on these applications at the Council's February 2006 meeting.
Motion at 2.

[10] The relief sought by Cooley is overbroad and unavailable even if Cooley had established a
legal right to some relief. Indeed, even if, *arguendo*, Cooley's due process claim had any merit,
it is well established that the only relief available would be a remand to the Council for it to take

*(Footnote continued)*

Accreditation Committee at its Spring 2006 meeting – precisely the same schedule outlined with Cooley in the Council's August 2004 decision and the Consultant's June 2005 letter. (Sebert Dec. ¶¶ 49-51). Indeed, the difference between this schedule and the revised schedule Cooley seeks this Court to impose is a mere three months.

Cooley's claim that the ABA's Standards and Rules require a more abbreviated schedule (Mem. at 6-7) is contrary to the plain language of the very rules on which it relies. Cooley focuses on Rule 18, which sets forth the process for law schools to seek ABA acquiescence before implementing a "major change" in its legal education program. Rule 18(c) provides that "[a] law school's application for acquiescence must be submitted to the Consultant's office at least 120 days prior to a scheduled meeting of the Accreditation Committee in order for the proposal to be considered by the Committee at that meeting." (Exhibit 4). This provision cannot plausibly be read, as Cooley submits, to mandate that the Accreditation Committee include in its agenda for each quarterly meeting every law school application that is submitted 120 days or more before that meeting. Instead, the Rule simply sets forth a minimum number of days – "at least 120" – within which a school's application must be submitted in order to have the opportunity for review at the next Accreditation Committee meeting. The language of the Rule leaves the Committee and Council discretion to follow a longer timetable as particular circumstances warrant; indeed, any other reading would ignore the phrase "*at least* 120 days."

Just such circumstances are presented here. The ABA's August 2004 sanction barred Cooley from operating branch campuses before August 2006. Recognizing this fact, the Council set forth a timetable for Cooley's applications, providing sufficient time for Committee and

---

further action consistent with the correct legal standards. *See, e.g., Cissell Mfg. Co. v. U.S. Dept. of Labor*, 101 F.3d 1132, 1136 (6th Cir. 1996).

Council review before August 2006 but at the same time ensuring that the applications and final decision would be based on fresh information. In addition, the Council set this schedule so that the fact finding reports on the new applications could be considered "in combination with" the sabbatical site inspection report on Cooley. As noted above, this reasoning was approved by Judge McKeague, who concluded "the Council's decision to defer action until the Spring of 2006, when it would have the benefit of Cooley's next Fall 2005 sabbatical site evaluation report, is adequately explained and makes eminent sense." 376 F. Supp. 2d at 773.

Cooley's reading of Rule 18(c) is not only at odds with the Rule's plain language, it makes no sense as a matter of practice. In Cooley's view, so long as a school's application was received 120 days before the next-scheduled Accreditation Committee meeting, the Committee would be obliged to consider it, no matter whether numerous applications from different schools are presented at the same time, or whether supplemental materials (such as the sabbatical site report in this case) should be obtained, or any other of a host of reasons why more time before Committee consideration would be justified. Such a regime would be both unworkable and unreasonable.

The other portions of Rule 18 cited by Cooley provide it no support. For example, Rule 18(i) simply provides that, once the site evaluation team has prepared a written evaluation based on its site visit, the "team shall promptly submit its report to the Consultant." (Exhibit 4, Rule 18(i)). The prior schedule set forth by the Council in its August 2004 decision – which anticipates Accreditation Committee review in spring 2006 – calls for nothing less. As described above, the Cooley site evaluation team expects to submit its report to the Consultant promptly once it is completed. (Sebert Dec. ¶ 49). Similarly, Cooley cites to the portion of Rule 18(i) that provides that the law school "shall be given at least thirty (30) days to prepare its response to the

report," and that this response must be received "at least fifteen (15) days" before the Accreditation Committee meeting. The repeated use of the phrase "at least" again gives the Committee and Council discretion to expand these periods as the circumstances warrant.

Finally, the ABA's interpretation of Rule 18 is entitled to deference by the courts even if it is not the only plausible, or even the most plausible, interpretation. Like an administrative agency, an accrediting body's interpretation of its own rules should be followed "unless plainly erroneous." *A.D. Transport Express, Inc. v. United States*, 290 F.3d 761, 765 (6th Cir. 2002). Such deference is especially appropriate regarding accreditation decisions, because accrediting procedures are "guides that, if construed by courts too strictly, would strip the accrediting bodies of the discretion they need to assess the unique circumstances presented by different schools." *Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 39 F. Supp. 2d 889, 896-97 (W.D. Mich. 1998), *aff'd*, 244 F.3d 521 (6th Cir. 2001). Cooley recognizes that such a deferential review standard applies here, *see* Mem. at 8, but makes no attempt to show that the ABA's longstanding interpretation of Rule 18 (as reflected, for example, in the Council's August 2004 decision) is plainly erroneous. No such showing is possible.

Cooley makes no claim that – absent the alleged violation of Rule 18 – due process otherwise is implicated. Any such claim would be frivolous.[11] To be actionable, a common law due process claim must rest on fundamental issues concerning notice and an opportunity to be heard and participate meaningfully in proceedings. *See Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 44 F.3d 447, 451

---

[11] In addition, although Cooley's complaint includes a claim for "Promissory Estoppel," (Complaint, ¶¶ 49-53), Cooley does not even reference this claim in its preliminary injunction motion, let alone establish any likelihood of success on such a claim so as to justify a mandatory injunction.

(7th Cir. 1994) (federal common law due process claim must involve substantial rights).  The

approximately three-month difference between the Accreditation Committee's consideration of

Cooley's applications in January 2006 – as Cooley here demands – and its consideration of the

applications in April 2006 cannot support a due process claim.  As Judge McKeague already

found, this schedule "makes eminent sense"; there simply is "no abuse of discretion in the

Council's preference for acting on fresh rather than stale evidence, on actual rather than

presumed facts."  376 F. Supp. 2d at 773.

With no showing of a clear likelihood of success, Cooley's request for a mandatory

injunction should be denied.

### B.      Cooley Has Not Demonstrated Irreparable Harm.

Before a preliminary injunction can be justified, the movant must establish irreparable

injury absent the requested injunction. *Sea Containers Ltd. v. Stena AB*, 890 F.2d 1205, 405-06

(D.C. Cir. 1989) (holding that plaintiff "failed to carry its necessary burden of showing sufficient

irreparable harm to command a preliminary injunction").  "[T]he injury must be both certain and

great; it must be actual and not theoretical. . . . [T]he party seeking injunctive relief must show

that '[t]he injury complained of [is] of such *imminence* that there is a 'clear and present' need for

equitable relief to prevent irreparable harm." *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C.

Cir. 1985) (internal citations omitted).  In addition, as noted above, in order to justify mandatory

injunctions, the alleged irreparable injury must be particularly "extreme or very serious."

*Clarke*, 355 F. Supp. 2d at 63.  Cooley makes no such showing.

Cooley first points to investments it made in physical facilities, law school libraries, and

faculty and staff hiring, and asserts that "the previous and ongoing costs of acquiring and

maintaining these facilities and personnel, which already amount to millions of dollars, are

unrecoverable and thus irreparable." (Mem. at 10.)  Yet Cooley makes no effort to describe why

the difference between Accreditation Committee review of Cooley's applications in January

2006 – which it moves this Court to order – and the Committee's already-planned review three-

months later results in any irreparable injury.  Cooley instead identifies these investments as

necessary prerequisites for the applications it has filed with the ABA; that is, investments it

would have proceeded with regardless of the particular timing of the ABA's review of its

applications.  As such, no "injury" connected with such investments could be said to arise from

whether the requested mandatory injunction is entered or not.  Under such circumstances,

Cooley's conclusory assertions of injury, with no supporting detail or explanation, are entitled to

no weight.  *See Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 48 (D.D.C. 2002)

("unsubstantiated assertions" are insufficient to support finding of irreparable harm); *Barton v.*

*Venneri*, 2005 WL 1119797, at *3 (D.D.C. May 11, 2005) (denying preliminary injunction

where no "competent evidence" of irreparable harm was presented).

     In addition, any injury that concerns such investments – whatever the cause – would

amount to monetary, economic losses.  Such losses can be remedied through monetary damages

and thus are not "irreparable" and do not support a preliminary injunction.  *Davenport v. Int'l*

*Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 367 (D.C. Cir. 1999) ("[T]he injury plaintiffs urge is

in any event not irreparable.  If plaintiffs ultimately succeed on the merits, this kind of injury can

be remedied with money damages.").  As the Court of Appeals reasoned in *Wisconsin Gas*,

"economic loss does not … constitute irreparable harm. … The key word in this consideration is

*irreparable*.  Mere injuries, however substantial, in terms of money, time and energy necessarily

expended in the absence of a stay are not enough."  785 F.2d at 675 (internal quotation omitted).

Instead, "[t]he possibility that adequate compensatory or other corrective relief will be available

at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.* Because the alleged injuries identified by Cooley can be remedied through monetary damages, they are not "irreparable."

Cooley also contends that the alleged delay in considering its applications "hampers Cooley's ability to recruit, process and enroll students (and collect tuitions and fees) for its new branch campuses." Yet such an inability to collect "tuitions and fees" again amounts to alleged monetary damages, which "will not support a finding of irreparable injury." *Wisconsin Gas Co.*, 785 F.2d at 675.[12] In addition, Cooley provides no evidence to link this alleged injury to whether the Accreditation Committee considers its applications in January 2006 versus April 2006. The conclusory statement that "[a]ny delay beyond February 2006 will severely limit Cooley's ability to meet its enrollment and budget projections" (Mem. at 10) is unsupported by any competent evidence. Nor does Cooley attempt to quantify any such damages to establish that they are so extreme as to potentially justify the mandatory injunction sought here.

Significantly, Cooley was aware of the ABA's planned schedule for evaluating Cooley's applications as long ago as August 2004 and certainly no later than June 2005, when the ABA informed Cooley by letter of the schedule that is currently in place and being followed. (Sebert Dec. ¶ 41). Yet Cooley waited over five months after receiving the ABA's June 2005 letter

---

[12] Cooley wrongly cites *Grutter v. Bollinger*, 247 F.3d 631, 633 (6th Cir. 2001) in support of its claim of irreparable injury. In *Grutter*, however, the district court had previously enjoined the University of Michigan Law School from considering race in its admissions decisions, and the Circuit Court stayed the injunction based in part on the University's showing, through competent evidence, that this decision impeded its ability to compete for applicants. *Id.* at 632-33. Here, in contrast, Cooley seeks a mandatory injunction, presents no competent evidence establishing or quantifying injury, and identifies the injury as monetary damages arising from an inability to collect tuition and fees from students at the proposed satellite campuses.

before challenging this schedule. "Such a delay may count against a plaintiff in the court's harm analysis." *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 286 (D.D.C. 2005).

### C. Granting the Requested Preliminary Injunction Would Harm The ABA And Others And Is Contrary to the Public Interest.

The requested injunction also should be denied because it would harm the ABA and others and be contrary to the public interest. The ABA has previously set forth a schedule for its evaluation of Cooley's applications. (Sebert Dec. ¶¶ 41, 49-54.) This schedule balances the interest in completing the application review process with the interest in ensuring that the ultimate decision is fair and based on a complete record that includes the most up-to-date available evidence. Cooley, which has known this schedule since August 2004, now seeks at the eleventh hour an injunction to interfere with this process. For example, under the ABA's schedule the results of the sabbatical site inspection report would be available to the Accreditation Committee as it reviews the applications. The schedule Cooley asks this Court to impose may be designed to frustrate the Accreditation Committee's desire to have this information. (*Id.*) Indeed, Cooley's proposed schedule is so short that the Accreditation Committee either would not have the report of the very site team that has visited Cooley regarding its applications or would receive that report only days before the Committee's January meeting. (*Id.*) Cooley's request that this Court interfere with the timing of the ABA's review of Cooley's applications thus would substantially harm both the ABA and those, such as current and prospective law students, who rely on the ABA to reach decisions based on its expert judgment on how best to proceed.

A preliminary injunction would disserve the public interest. Those who look to and value the ABA's evaluation of legal education -- including current and prospective law students, faculty, state supreme courts and bar admission authorities, the U.S. Department of Education

and the public -- have a substantial interest in allowing the ABA to fully and completely evaluate applications to ensure that its accreditation standards and guidelines are met. It is partly because of this public interest, and the recognized expertise of accrediting bodies like the ABA, that courts defer to the decisions of such accrediting bodies. Here, the Council articulated a basis for the schedule it established that made "eminent sense," 376 F. Supp. 2d at 773, and Cooley has demonstrated no good reason for this Court to interfere in and disrupt the process of law school accreditation in this fashion. The requested injunction thus is contrary to the public interest and should be denied. *See Staver v. American Bar Ass'n*, 169 F. Supp. 2d 1372, 1379-80 (M.D. Fla. 2001) (denying preliminary injunction in part because intervening in the law school accreditation process would be "inefficient and chaotic"); *Zavaletta v. American Bar Ass'n*, No. 89-326-N (E.D. Va. May 6, 1989) (declining to enter preliminary injunction against ABA in part because public interest would not be served by disrupting law school accreditation system).

Cooley contends that the requested mandatory injunction would serve the public interest "by forcing the Council" to follow "its own prescribed procedures and standards." (Mem. at 11). As shown above, however, the schedule set by the ABA for its review of Cooley's applications is fully consistent with its Rules. Cooley also contends that the injunction will serve the interests of prospective students to the proposed satellite facilities. (Mem. at 11). Cooley makes no effort to establish, however, despite its burden to do so, that any such prospective students could not receive equal educational opportunities at other Cooley facilities or with other law schools. Moreover, it is difficult to understand how the interests of prospective students would be served by forcing the ABA to decide Cooley's applications with less than the complete record, including the sabbatical site report. If Cooley is in full compliance with the ABA's Standards and Rules, as it contends, the sabbatical site report will confirm that compliance.

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the accompanying

declarations and exhibits, Cooley's Motion for Preliminary Injunction should be denied.

Dated:  December 19, 2005                      Respectfully submitted,


                                               By: /s/ Kevin M. Henry
                                                   Kevin M. Henry, D.C. Bar No. 472167
                                                   SIDLEY AUSTIN BROWN & WOOD LLP
                                                   1501 K Street, N.W.
                                                   Washington, D.C. 20005
                                                   (202) 736-8000
                                                   Attorneys for Defendants


                                               Of Counsel:

                                                   David T. Pritikin
                                                   Anne E. Rea
                                                   Kathleen L. Roach
                                                   Michael P. Doss
                                                   SIDLEY AUSTIN BROWN & WOOD LLP
                                                   One South Dearborn Street
                                                   Chicago, Illinois 60603
                                                   (312) 853-7000
                                                   Attorneys for Defendants

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THOMAS M. COOLEY LAW SCHOOL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNCIL OF THE SECTION OF LEGAL | ) | Civil Action No. 05cv2317 (RJL) |
| EDUCATION AND ADMISSIONS TO | ) | |
| THE BAR OF THE AMERICAN BAR | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED ORDER

Upon consideration of plaintiff's motion for a preliminary injunction, defendants'

opposition, plaintiff's reply, and the arguments of counsel before the Court, it is hereby

ORDERED that plaintiff's motion for a preliminary injunction is DENIED.


_____

Judge Richard J. Leon, U.S. District Court
for the District of Columbia


Date: December ____, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of December, 2005, I caused the foregoing Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion For Preliminary Injunction, Exhibits and Proposed Order to be served on plaintiff's counsel by the Electronic Court Filing system.

/s/ Kevin M. Henry
Kevin M. Henry, D.C. Bar. No. 472167
SIDLEY AUSTIN BROWN & WOOD LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)
