Exhibit 3

# TABLE OF CONTENTS

## STANDARDS FOR APPROVAL OF LAW SCHOOLS

**Chapter 1 GENERAL PURPOSES AND PRACTICES; DEFINITIONS**

Standard 101. Basic Requirements for Approval ............................................................. 4

Standard 102. Provisional Approval ........................................................................... 4

Standard 103. Full Approval ................................................................................... 6

Standard 104. Seek to Exceed Requirements ................................................................ 6

Standard 105. Major Change in Program or Structure ...................................................... 7

Standard 106. Definitions ...................................................................................... 9


**Chapter 2 ORGANIZATION AND ADMINISTRATION**

Standard 201. Resources for Program ........................................................................ 11

Standard 202. Self Study ...................................................................................... 11

Standard 203. Governing Board of an Independent Law School .................................... 11

Standard 204. Governing Board and Law School Authority ........................................... 12

Standard 205. Dean ............................................................................................. 12

Standard 206. Allocation of Authority between Dean and Faculty ................................. 13

Standard 207. Involvement of Alumni, Students and Others .......................................... 13

Standard 208. Non-University Affiliated Law Schools ................................................. 13

Standard 209. Law School-University Relationship ..................................................... 13

Standard 210. Equality of Opportunity .................................................................... 14

Standard 211. Equal Opportunity Effort ................................................................... 16

Standard 212. Individuals with Disabilities .............................................................. 17

## Chapter 3 PROGRAM OF LEGAL EDUCATION

Standard 301. Objectives ........................................................................ 18

Standard 302. Curriculum ...................................................................... 18

Standard 303. Academic Standards and Achievements ............................... 20

Standard 304. Course of Study and Academic Calendar ............................. 21

Standard 305. Study Outside the Classroom ............................................ 24

Standard 306. Distance Education .......................................................... 25

Standard 307. Participation in Studies or Activities in a Foreign Country ................... 27

Standard 308. Degree Programs in Addition to J.D ................................... 27

## Chapter 4 THE FACULTY

Standard 401. Qualifications .................................................................. 29

Standard 402. Size of Full-Time Faculty ................................................. 29

Standard 403. Instructional Role of Faculty ............................................ 31

Standard 404. Responsibilities of Full-Time Faculty ................................. 32

Standard 405. Professional Environment ................................................. 32

## Chapter 5 ADMISSIONS AND STUDENT SERVICES

Standard 501. Admissions ...................................................................... 35

Standard 502. Educational Requirements ................................................ 35

Standard 503. Admission Test ................................................................ 36

Standard 504. Character and Fitness ....................................................... 36

Standard 505. Previously Disqualified Applicant ...................................... 37

Standard 506. Applicants from State-Accredited Law Schools ..................... 37

Standard 507. Applicants from Foreign Law Schools ................................. 37

Standard 508. Enrollment of Non-Degree Candidates ..................................................... 38

Standard 509. Basic Consumer Information .................................................................. 38

Standard 510. Student Loan Programs ........................................................................... 39

Standard 511. Student Support Services ........................................................................ 40

**Chapter 6  LIBRARY AND INFORMATION RESOURCES**

Standard 601. General Provisions .................................................................................. 41

Standard 602. Administration ......................................................................................... 41

Standard 603. Director of the Law Library ................................................................... 42

Standard 604. Personnel ................................................................................................. 42

Standard 605. Services .................................................................................................... 43

Standard 606. Collection ................................................................................................ 43

**Chapter 7  FACILITIES**

Standard 701. General Requirements .............................................................................. 45

Standard 702. Law Library .............................................................................................. 46

Standard 703. Research and Study Space ....................................................................... 46

Standard 704. Technological Capacities ......................................................................... 46

**Chapter 8  COUNCIL AUTHORITY, VARIANCES, AND AMENDMENTS**

Standard 801. Council Authority .................................................................................... 47

Standard 802. Variance. .................................................................................................. 47

Standard 803. Amendment of Standards, Interpretations and Rules .............................. 47


Appendix 1 ....................................................................................................................... 49

Key Word Index ............................................................................................................... 51

# CHAPTER 1

## GENERAL PURPOSES AND PRACTICES; DEFINITIONS

### Standard 101. *BASIC REQUIREMENTS FOR APPROVAL*

A law school approved by the Association or seeking approval by the Association shall demonstrate that its program is consistent with sound legal education principles. It does so by establishing that it is being operated in compliance with the Standards.

*Interpretation 101-1:*
*To enable the Accreditation Committee and Council to determine whether a law school has demonstrated that its program of legal education is consistent with sound legal education principles and is being operated in compliance with the Standards, a law school shall furnish an annual questionnaire, self-study, site evaluation questionnaire, and such other information as the Accreditation Committee and Council may require. These documents must be complete and accurate and submitted timely in the form specified.*

*The information provided by these means not only informs the Council about the status of each law school but also enables the Council, in meeting its obligations with respect to legal education as a whole, to ascertain national norms of legal education, areas in which improvements are being made, and those where further attention is needed.*

*Interpretation 101-2:*
*Accreditation or approval of a law school by the American Bar Association is not transferable. A transfer of all, or substantially all, of the academic programs or assets of (1) a law school or (2) a university or college of which the law school is a part does not include the transfer of the law school's accreditation status.*

### Standard 102. *PROVISIONAL APPROVAL*

(a) A law school shall be granted provisional approval only if it establishes that it is in substantial compliance with each of the Standards and presents a reliable plan for bringing the law school into full compliance with the Standards within three years after receiving provisional approval.

(b) A law school that is provisionally approved may have its approval withdrawn if it is determined that the law school is not in substantial compliance with the Standards or that the law school is not making adequate progress toward coming into full compliance with the Standards. If five years have elapsed since the law school was provisionally approved and it has not qualified for full approval, provisional approval shall lapse and the law school shall automatically be removed from the list of approved law schools unless, prior to the end of the five year period, in an extraordinary case and for good cause shown, the Council extends the time within which the law school must obtain full approval.

(c) A law school shall confer the J.D. degree contemporaneously with the time academic requirements for the degree are completed.

**Interpretation 102-1:**
*Substantial compliance must be achieved as to each of the Standards. Substantial compliance with each Standard is measured at the time a law school seeks provisional approval. Plans for construction, financing, library improvement, and recruitment of faculty which are presented by a law school seeking provisional approval do not, in themselves, constitute evidence of substantial compliance.*

**Interpretation 102-2:**
*In order to establish that it has a reliable plan to come into full compliance with the Standards within three years after receiving provisional approval, a law school must clearly state the specific steps that it plans to take to bring itself into full compliance and must show that there is a reasonable probability that such steps will be successful.*

**Interpretation 102-3:**
*A law school seeking provisional approval may not offer a post-J.D. degree program. The primary focus of a school seeking provisional approval should be to do everything necessary to comply with the Standards for the J.D. degree program.*

**Interpretation 102-4:**
*A student at a provisionally approved law school and an individual who graduates while the school is provisionally approved are entitled to the same recognition given to students and graduates of fully approved law schools.*

**Interpretation 102-5:**
*An approved law school may not retroactively grant a J.D. degree to a graduate of its predecessor unapproved institution.*

**Interpretation 102-6:**
*A provisionally approved law school shall state in all of its printed and electronic materials generally describing the law school and its program and in any printed and electronic materials specifically targeted at prospective students that it is a provisionally approved law school. Similarly, when it refers to its approval status in publicity releases and communications with all students, applicants or other interested parties, it shall state that it is a provisionally approved law school.*

**Interpretation 102-7:**
*An unapproved law school seeking provisional approval must include the following language in all of its printed and electronic materials generally describing the law school and its program and in any printed and electronic materials specifically targeted at prospective students:*

> *The Dean is fully informed as to the Standards and Rules of Procedure for the Approval of Law Schools by the American Bar Association. The Administration and the Dean are determined to devote all necessary resources and in other respects to take all necessary steps to present a program of legal education that will qualify for approval by the American Bar Association. The Law School makes no representation to any applicant that it will be approved by the American Bar Association prior to the graduation of any matriculating student.*

**Interpretation 102-8:**
*In most jurisdictions an individual cannot sit for the bar examination unless he or she has graduated from a law school fully or provisionally approved by the American Bar Association. However, the determination of qualifications and fitness to sit for the bar examination is made by the jurisdiction's bar admission authorities.*

**Interpretation 102-9:**
*A law school seeking provisional approval shall not delay conferring a J.D. degree upon a student in anticipation of obtaining American Bar Association approval.*

**Interpretation 102-10:**
*An individual who matriculates at a law school that is provisionally approved or who is a student enrolled in a law school at the time it receives provisional approval and who completes the course of study and graduates from that school within a typical and reasonable period of time is deemed by the Council to be a graduate of an approved law school, even though the school loses its provisional approval status while the individual is enrolled in the school.*

## Standard 103.  *FULL APPROVAL*

(a)  **A law school shall be granted full approval only if it establishes that it is in full compliance with the Standards and it has been provisionally approved for not fewer than two years.**

(b)  **If a determination is made that an approved law school is no longer in compliance with the Standards, and if it fails to take remedial action, the law school may be subjected to an appropriate sanction.**

**Interpretation 103-1:**
*An individual who matriculates at a law school that is then approved and who completes the course of study and graduates in the normal period of time required therefor is deemed by the Council to be a graduate of an approved school, even though the school's approval was withdrawn while the individual was enrolled therein.*

**Interpretation 103-2:**
*"Sanctions" include, but are not limited to, censure, probation or removal of the school from the list of law schools approved by the Association.*

**Interpretation 103-3:**
*In the case of an approval required as the consequence of a major change in organizational structure, the minimum time period of two years stated in this Standard may be modified and/or conditioned pursuant to Rule 19 of the Rules of Procedure for Approval of Law Schools.*

## Standard 104. *SEEK TO EXCEED REQUIREMENTS*

**An approved law school should seek to exceed the minimum requirements of the Standards.**

*Interpretation 104-1:*
*As stated in the Preamble, the Standards "are minimum requirements designed, developed,*
*and implemented for the purpose of advancing the basic goal of providing a sound program*
*of legal education." Consistent with the aspirations, mission and resources of a law school,*
*it should continuously seek to exceed these minimum requirements in order to improve the*
*quality of legal education and to promote high standards of professional competence,*
*responsibility and conduct.*

## Standard 105. *MAJOR CHANGE IN PROGRAM OR STRUCTURE*

**Before a law school makes a major change in its program of legal education or**
**organizational structure it shall obtain the acquiescence of the Council for the change.**
**Subject to the additional requirements of subsections (1) and (2), acquiescence shall be**
**granted only if the law school establishes that the change will not detract from the law**
**school's ability to meet the requirements of the Standards.**

**(1) If the proposed major change is the establishment of a degree program**
**other than the J.D. degree, the law school must also establish that it meets the**
**requirements of Standard 308.**

**(2) If the proposed major change involves instituting a new full-time or part-**
**time division, merging or affiliating with one or more approved or unapproved**
**law schools, acquiring another law school or educational institution, or opening**
**a Branch or Satellite campus, the law school must also establish that the law**
**school is in compliance with the Standards or that the proposed major change**
**will substantially enhance the law school's ability to comply with the Standards.**

*Interpretation 105-1:*
*Major changes in the program of legal education or the organizational structure of a law*
*school include:*

*(1) Instituting a new full-time or part-time division;*

*(2) Changing from a full-time to a part-time program or from a part-time to a full-*
*time program;*

*(3) Establishing a two-year undergraduate/four year law school or similar program;*

*(4) Establishing a new or different program leading to a degree other than the J.D.*
*degree;*

*(5) A change in program length measurement from clock hours to credit hours;*

*(6) A substantial increase in the number of clock or credit hours that are required*
*for graduation;*

*(7) Merging or affiliating with one or more approved or unapproved law schools;*

*(8) Merging or affiliating with one or more universities;*

*(9) Materially modifying the law school's legal status or institutional relationship with a parent institution;*

*(10) Acquiring another law school or educational institution;*

*(11) Acquiring or merging with another university by the parent university where it appears that there may be substantial impact on the operation of the law school;*

*(12) Transferring all, or substantially all, of the academic program or assets of the approved law school to another law school or university;*

*(13) Opening of a Branch campus or Satellite campus.*

*(14) A change in control of the school resulting from a change in ownership of the school or a contractual arrangement; and*

*(15) A change in the location of the school that could result in substantial changes in the faculty, administration, student body or management of the school.*

**Interpretation 105-2:**
*The establishment of a Branch campus of an approved law school constitutes the creation of a different law school. Consequently, a Branch campus must have a permanent full-time faculty, an adequate working library, adequate support and administrative staff, and an adequate physical facilities and technological capacities. A Branch campus shall apply for provisional approval under the provisions of Standard 102 and Rule 4. (*

**Interpretation 105-3:**
*The establishment of a Satellite campus at which a law school offers no more than the first-year of its full-time program, or the first three semesters (or equivalent) of its part-time program, requires at least:*

*(1) Full-time faculty of the law school who teach substantially all of the curriculum offered at the Satellite campus and who are reasonably available at the Satellite campus for consultation with students;*

*(2) Library resources and staff at the Satellite campus that are adequate to support the curriculum offered at the Satellite campus and that are reasonably accessible to students at the Satellite campus;*

*(3) Academic advising, career services and other student support services that are adequate to support the program offered at the Satellite campus, that are reasonably equivalent to such services offered to similarly situated students at the law school's main campus and that are offered in person at the Satellite campus or otherwise are reasonably accessible to students at the Satellite campus;*

*(4)  That students attending the Satellite campus have access to the school's co-curricular activities and other educational benefits on a roughly proportional basis; and*

*(5)  Physical facilities and technological capacities at the Satellite campus that are adequate to support the curriculum offered at and the students attending the Satellite campus.*

**Interpretation 105-4:**
*A law school that seeks to establish a Satellite campus at which it will offer courses beyond its first-year program must show that it can adequately support its program at the Satellite campus.  It must establish at least:*

*(1)  That students attending the Satellite campus have reasonable access to full-time faculty, library resources and staff, and academic advising, career services and other support services that are adequate to support the program that the law school offers at the Satellite campus and that are reasonably equivalent to the resources and services offered to similarly situated students at the law school's main campus;*

*(2)  That students attending the Satellite campus have access to the school's co-curricular activities and other educational benefits on a roughly proportional basis; and*

*(3)  That the physical facilities and technological capacities at the Satellite campus are adequate to support the curriculum offered at and the students attending the Satellite campus.*

**Interpretation 105-5:**
*If a student would be able to take at a Satellite campus the equivalent of two-thirds or more of the credit hours that a law school requires for the award of the J.D. degree, all of the requirements set forth in Interpretation 105-2 apply to the establishment of such a Satellite campus except the requirement concerning provisional approval.*

**Interpretation 105-6:**
*The Council has delegated to the Accreditation Committee the authority to grant acquiescence in the types of major changes listed in Interpretations 105-1 (4), (5) and (6).*


## Standard 106.  *DEFINITIONS*

**As used in the Standards and Interpretations:**

**(1)  "Accreditation Committee" means the Accreditation Committee of the Section.**

**(2)  "Approved law school" means a law school that appears on the list of law schools approved by the American Bar Association.**

**(3)  "Association" means the American Bar Association.**

(4) "Branch campus" means a separate location at which the law school offers sufficient courses that a student could earn at the separate location all of the credit hours that the law school requires for the J.D. degree.

(5) "Consultant" means the Consultant on Legal Education to the American Bar Association.

(6) "Council" means the Council of the Section.

(7) "Dean" includes an acting or interim dean.

(8) "Governing board" means a board of trustees, board of regents, or comparable body that has ultimate policy making authority for a law school or the university of which the law school is a part.

(9) "House" means the House of Delegates of the American Bar Association.

(10) "Interpretations" mean the Interpretations of the Standards for Approval of Law Schools.

(11) "J.D. degree" means the first professional degree in law granted by a law school.

(12) "President" includes the chief executive officer of a university or, if the university has more than one administratively independent unit, of the unit of which a law school is a part.

(13) "Rules" mean the Rules of Procedure for the Approval of Law Schools by the American Bar Association.

(14) "Satellite campus" means a separate location (other than one approved under the Criteria for Approval of Semester Abroad Programs) which is not within reasonable proximity to the main law school campus and at which a student could take the equivalent of 16 or more semester credit hours toward the law school's J.D. degree but which does not constitute a Branch campus.

(15) "Section" means the Section of Legal Education and Admissions to the Bar of the American Bar Association.

(16) "Standards" mean the Standards for the Approval of Law Schools.

(17) "University" means a post secondary educational institution that confers a baccalaureate degree and may grant other degrees, whether it is called university, college, or other name.

## CHAPTER 2

## ORGANIZATION AND ADMINISTRATION

### Standard 201. *RESOURCES FOR PROGRAM*

**(a)  The present and anticipated financial resources of a law school shall be adequate to sustain a sound program of legal education and accomplish its mission.**

**(b)  A law school shall be so organized and administered that its resources are used to provide a sound program of legal education and to accomplish its mission.**

***Interpretation 201-1:***
*A law school does not comply with the Standards if its financial resources are so inadequate as to have a negative and material effect on the education students receive.*

***Interpretation 201-2:***
*A law school may not base the compensation paid any person for service to the law school (other than compensation paid a student or associate for reading and correcting papers or similar activity) on the number of persons enrolled in the law school or in any class or on the number of persons applying for admission to or registering in the law school.*

### Standard 202. *SELF STUDY*

**(a) The dean and faculty of a law school shall develop and periodically revise a written self study, which shall include a mission statement.  The self study shall describe the program of legal education, evaluate the strengths and weaknesses of the program in light of the school's mission, set goals to improve the program, and identify the means to accomplish the law school's unrealized goals.**

**(b) The self study shall address and describe how the law school's program of legal education conforms to the requirements of Standards 301(a) and (b).**

***Interpretation 202-1:***
*A current self study shall be submitted by a law school seeking provisional approval, a provisionally approved law school before its annual site evaluation, and a fully approved law school before any regular or special site evaluation.*

### Standard 203. *GOVERNING BOARD OF AN INDEPENDENT LAW SCHOOL*

**A law school that is not part of a university shall be governed by a governing board composed of individuals dedicated to the maintenance of a sound program of legal education.**

*Interpretation 203-1*
*The governing board of a law school that is not part of a university should authorize the*
*dean to serve as chief executive, or chief academic officer of the law school, or both and*
*shall define the scope of the dean's authority in compliance with the Standards. The dean*
*shall be responsible to the governing board. The dean may be a member of the board but*
*should not serve as chairperson of the board.*

## Standard 204.  *GOVERNING BOARD AND LAW SCHOOL AUTHORITY*

(a)  **A governing board may establish general policies that are applicable to a law school
if they are consistent with the Standards.**

(b)  **The dean and faculty shall formulate and administer the educational program of
the law school, including curriculum; methods of instruction; admissions; and
academic standards for retention, advancement, and graduation of students; and shall
recommend the selection, retention, promotion, and tenure (or granting of security of
position) of the faculty.**

*Interpretation 204-1:*
*An action of a university committee may violate the standards if it deprives the dean and*
*faculty of a law school of their appropriate roles for recommending faculty promotion and*
*tenure or security of position.*

*Interpretation 204-2:*
*Admission of a student to a law school without the approval of the dean and faculty of the*
*law school violates the Standards.*

## Standard 205.  *DEAN*

(a) **A law school shall have a full-time dean, selected by the governing board or its
designee, to whom the dean shall be responsible.**

(b) **A law school shall provide the dean with the authority and support needed to
discharge the responsibilities of the position and those contemplated by the Standards.**

(c) **Except in extraordinary circumstances, a dean shall also hold appointment as a
member of the faculty with tenure.**

(d) **The faculty or a representative body of it shall advise, consult, and make
recommendations to the appointing authority in the selection of a dean.**

*Interpretation 205-1:*
*The faculty or a representative body of it should have substantial involvement in the*
*selection of a dean. Except in circumstances demonstrating good cause, a dean should not*
*be appointed or reappointed to a new term over the stated objection of a substantial*
*majority of the faculty.*

**Standard 206.  *ALLOCATION OF AUTHORITY BETWEEN DEAN AND FACULTY***

The allocation of authority between the dean and the law faculty is a matter for determination by each institution as long as both the dean and the faculty have a significant role in determining educational policy.

**Standard 207.  *INVOLVEMENT OF ALUMNI, STUDENTS AND OTHERS***

A law school may involve alumni, students, and others in a participatory or advisory capacity; but the dean and faculty shall retain control over matters affecting the educational program of the law school.

**Standard 208.  *NON-UNIVERSITY AFFILIATED LAW SCHOOLS***

If a law school is not part of a university or, although a part, is physically remote from the rest of the university, the law school should seek to provide its students and faculty with the benefits that usually result from a university connection, such as by enlarging its library collection to include materials generally found only in a university library and by developing working relationships with other educational institutions in the community.

**Standard 209.  *LAW SCHOOL-UNIVERSITY RELATIONSHIP***

(a)  If a law school is part of a university, that relationship shall serve to enhance the law school's program.

(b)  If a university's general policies do not adequately facilitate the recruitment and retention of competent law faculty, appropriate separate policies should be established for the law school.

(c)  The resources generated by a law school that is part of a university should be made available to the law school to maintain and enhance its program of legal education.

(d)  A law school shall be given the opportunity to present its recommendations on budgetary matters to the university administration before the budget for the law school is submitted to the governing board for adoption.

*Interpretation 209-1:*
*A law school does not comply with the Standards if the charges and costs assessed against the law school's revenue by the university leave the law school with financial resources so inadequate as to have a negative and material effect on the education students receive.*

*Interpretation 209-2:*
*The resources generated by a law school that is part of a university should be made available to the law school to maintain and enhance its program of legal education. "Resources generated" includes law school tuition and fees, endowment restricted to the law school, gifts to the law school, and income from grants, contracts, and property of the law school. The university should provide the law school with a satisfactory explanation for any use of resources generated by the law school to support non-law school activities and central university services. In turn, the law school should benefit on a reasonable basis in the allocation of university resources.*

## Standard 210. *EQUALITY OF OPPORTUNITY*

(a)  A law school shall foster and maintain equality of opportunity in legal education, including employment of faculty and staff, without discrimination or segregation on ground of race, color, religion, national origin, sex, or sexual orientation.

(b)  A law school may not use admission policies or take other action to preclude admission of applicants or retention of students on the basis of race, color, religion, national origin, sex, or sexual orientation.

(c)  The denial by a law school of admission to a qualified applicant is treated as made upon the ground of race, color, religion, national origin, sex, or sexual orientation if the ground of denial relied upon is

> (1)  a state constitutional provision or statute that purports to forbid the admission of applicants to a school on the ground of race, color, religion, national origin, sex, or sexual orientation; or

> (2)  an admissions qualification of the school which is intended to prevent the admission of applicants on the ground of race, color, religion, national origin, sex, or sexual orientation though not purporting to do so.

(d)  The denial by a law school of employment to a qualified individual is treated as made upon the ground of race, color, religion, national origin, sex, or sexual orientation if the ground of denial relied upon is an employment policy of the school which is intended to prevent the employment of individuals on the ground of race, color, religion, national origin, sex, or sexual orientation though not purporting to do so.

(e)  This Standard does not prevent a law school from having a religious affiliation or purpose and adopting and applying policies of admission of students and employment of faculty and staff which directly relate to this affiliation or purpose so long as (i) notice of these policies has been given to applicants, students, faculty, and staff before their affiliation with the law school, and (ii) the religious affiliation, purpose, or policies do not contravene any other Standard, including Standard 405(b) concerning academic freedom.  These policies may provide a preference for persons adhering to the religious affiliation or purpose of the law school, but shall not be applied to use admission policies or take other action to preclude admission of applicants or retention of

students on the basis of race, color, religion, national origin, sex, or sexual orientation. This Standard permits religious policies as to admission, retention, and employment only to the extent that they are protected by the United States Constitution.  It is administered as if the First Amendment of the United States Constitution governs its application.

(f)  Equality of opportunity in legal education includes equal opportunity to obtain employment.  A law school should communicate to every employer to whom it furnishes assistance and facilities for interviewing and other placement functions the school's firm expectation that the employer will observe the principle of equal opportunity and will avoid objectionable practices such as

(1)  refusing to hire or promote members of groups protected by this policy because of the prejudices of clients or of professional or official associates;

(2)  applying standards in the hiring and promoting of these individuals that are higher than those applied otherwise;

(3)  maintaining a starting or promotional salary scale as to these individuals that is lower than is applied otherwise; and

(4)  disregarding personal capabilities by assigning, in a predetermined or mechanical manner, these individuals to certain kinds of work or departments.

*Interpretation 210-1:*
*Schools may not require applicants, students, or employees to disclose their sexual orientation, although they may provide opportunities for them to do so voluntarily.*

*Interpretation 210-2:*
*This Standard does not require a law school to adopt policies or take actions that would violate federal law applicable to that school.*

*Interpretation 210-3:*
*As long as a school complies with the requirements of Standard 210(e), the prohibition concerning sexual orientation does not require a religiously affiliated school to act inconsistently with the essential elements of its religious values and beliefs.  For example, it does not require a school to recognize or fund organizations whose purposes or objectives with respect to sexual orientation conflict with the essential elements of the religious values and beliefs held by the school.*

*Interpretation 210-4:*
*Standard 210(f) applies to all employers, including government agencies, to whom a school furnishes assistance and facilities for interviewing and other placement services.  However, this Standard does not require a law school to implement its terms by excluding any employer unless that employer discriminates unlawfully.*

**Standard 211.  *EQUAL OPPORTUNITY EFFORT***

> **Consistent with sound legal education policy and the Standards, a law school shall demonstrate, or have carried out and maintained, by concrete action, a commitment to providing full opportunities for the study of law and entry into the profession by qualified members of groups, notably racial and ethnic minorities, which have been victims of discrimination in various forms.  This commitment typically includes a special concern for determining the potential of these applicants through the admission process, special recruitment efforts, and a program that assists in meeting the unusual financial needs of many of these students, but a law school is not obligated to apply standards for the award of financial assistance different from those applied to other students.**

> *Interpretation 211-1:*
> *This standard does not specify the forms of concrete actions a school must take in order to satisfy its equal employment obligation.  The satisfaction of such obligation is based on the totality of its actions.  Among the kinds of actions that can demonstrate a school's commitment to providing equal opportunities for the study of law and entry into the profession by qualified members of groups that have been the victims of discrimination are the following:*

>> *a.  Participating in job fairs and other programs designed to bring minority students to the attention of employers.*

>> *b.  Establishing procedures to review the experiences of minority graduates to determine whether their employers are affording equal opportunities to members of minority groups for advancement and promotion.*

>> *c.  Intensifying law school recruitment of minority applicants, particularly at colleges with substantial numbers of minority students.*

>> *d.  Promoting programs to identify outstanding minority high school students and college undergraduates, and encouraging them to study law.*

>> *e.  Supporting the activities of the Council on Legal Education Opportunity (CLEO) and other programs that enable more disadvantaged students to attend law school.*

>> *f.  Creating a more favorable law school environment for minority students by providing academic support services, supporting minority student organizations, promoting contacts with minority lawyers, and hiring minority administrators.*

>> *g.  Encouraging and participating in the development and expansion of programs to assist minority law graduates to pass the bar.*

>> *h.  Developing and implementing specific plans designed to increase the number of minority faculty in tenure and tenure-track positions by applying a broader range of criteria than may customarily be applied in the employment and tenure of law teachers, consistent with maintaining standards of quality.*

*i. Developing programs that assist in meeting the unusual financial needs of many minority students, as provided in Standard 211.*

**Interpretation 211-2:**
*Each ABA approved law school (1) shall prepare a written plan describing its current program and the efforts it intends to undertake relating to compliance with Standard 211, and (2) maintain a current file which will include the specific actions which have been taken by the school to comply with its stated plan.*

## Standard 212.  *INDIVIDUALS WITH DISABILITIES*

**A law school may not discriminate against individuals with disabilities in its program of legal education.  A law school shall provide full opportunities for the study of law and entry into the profession by qualified disabled individuals.  A law school may not discriminate on the basis of disability in the hiring, promotion, and retention of otherwise qualified faculty and staff.**

**Interpretation 212-1:**
*Individual with disability, for the purpose of this Standard, is defined in Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 706, as further defined by the regulations on post secondary education, 45 C.F.R. Section 84.3(k)(3) and by the Americans with Disabilities Act, 42 U.S.C. Sections 12101 et seq.*

**Interpretation 212-2:**
*As to those matters covered by Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act, this Standard is not designed to impose obligations upon law schools beyond those provided by those statutes.*

**Interpretation 212-3:**
*The essence of proper service to individuals with disabilities is individualization and reasonable accommodation.  Each individual shall be individually evaluated to determine if he or she meets the academic standards requisite to admission and participation in the law school program.  The use of the term "qualified" in the Standard requires a careful and thorough consideration of each applicant and each student's qualifications in light of reasonable accommodations.  Reasonable accommodations are those that do not fundamentally alter the nature of the program, that can be provided without undue financial or administrative burden, and that can be provided without lowering academic and other essential performance standards.*

## CHAPTER 3
## PROGRAM OF LEGAL EDUCATION

### Standard 301.  *OBJECTIVES*

**(a) A law school shall maintain an educational program that prepares its students for admission to the bar, and effective and responsible participation in the legal profession.**

**(b) A law school shall ensure that all students have reasonably comparable opportunities to take advantage of the school's educational program, co-curricular programs, and other educational benefits.**

*Interpretation 301-1:*
*A law school shall maintain an educational program that prepares its students to address current and anticipated legal problems.*

*Interpretation 301-2:*
*A law school may offer an educational program designed to emphasize certain aspects of the law or the legal profession.*

*Interpretation 301-3:*
*Among the factors to be considered in assessing the extent to which a law school complies with this Standard are the rigor of its academic program, including its assessment of student performance, and the bar passage rates of its graduates.*

*Interpretation 301-4:*
*Among the factors to consider in assessing compliance with Standard 301(b) are whether students have reasonably comparable opportunities to benefit from regular interaction with full-time faculty and other students, from such co-curricular programs as journals and competition teams, and from special events such as lecture series and short-time visitors.*

*Interpretation 301-5:*
*For schools providing more than one enrollment or scheduling option, the opportunities to take advantage of the school's educational program, co-curricular activities, and other educational benefits for students enrolled under one option shall be deemed reasonably comparable to the opportunities of students enrolled under other options if the opportunities are roughly proportional based upon the relative number of students enrolled in various options.*

### Standard 302.  *CURRICULUM*

**(a) A law school shall require that each student receive substantial instruction in:**

(1) the substantive law generally regarded as necessary to effective and responsible participation in the legal profession;

(2) legal analysis and reasoning, legal research, problem solving, and oral communication;

(3) writing in a legal context, including at least one rigorous writing experience in the first year and at least one additional rigorous writing experience after the first year;

(4) other professional skills generally regarded as necessary for effective and responsible participation in the legal profession; and

(5) the history, goals, structure, values, rules, and responsibilities of the legal profession and its members.

(b) A law school shall offer substantial opportunities for:

(1) live-client or other real-life practice experiences, appropriately supervised and designed to encourage reflection by students on their experiences and on the values and responsibilities of the legal profession, and the development of one's ability to assess his or her performance and level of competence;

(2) student participation in pro bono activities; and

(3) small group work through seminars, directed research, small classes, or collaborative work.

**Interpretation 302-1:**
*Factors to be considered in evaluating the rigor of writing instruction include: the number and nature of writing projects assigned to students; the opportunities a student has to meet with a writing instructor for purposes of individualized assessment of the student's written products; the number of drafts that a student must produce of any writing project; and the form of assessment used by the writing instructor.*

**Interpretation 302-2:**
*Each law school is encouraged to be creative in developing programs of instruction in professional skills related to the various responsibilities which lawyers are called upon to meet, using the strengths and resources available to the school. Trial and appellate advocacy, alternative methods of dispute resolution, counseling, interviewing, negotiating, problem solving, factual investigation, organization and management of legal work, and drafting are among the areas of instruction in professional skills that fulfill Standard 302 (a)(4).*

***Interpretation 302-3:***
*A school may satisfy the requirement for substantial instruction in professional skills in various ways, including, for example, requiring students to take one or more courses having substantial professional skills components. To be "substantial," instruction in professional skills must engage each student in skills performances that are assessed by the instructor.*

***Interpretation 302-4:***
*A law school need not accommodate every student requesting enrollment in a particular professional skills course.*

***Interpretation 302-5:***
*The offering of live-client or real-life experiences may be accomplished through clinics or field placements. A law school need not offer these experiences to every student nor must a law school accommodate every student requesting enrollment in any particular live-client or other real-life practice experience.*

***Interpretation 302-6:***
*A law school should involve members of the bench and bar in the instruction required by Standard 302(a)(5).*

***Interpretation 302-7:***
*If a law school grants academic credit for a bar examination preparation course, such credit may not be counted toward the minimum requirements for graduation established in Standard 304. A law school may not require successful completion of a bar examination preparation course as a condition of graduation.*

***Interpretation 302-8:***
*A law school shall engage in periodic review of its curriculum to ensure that it prepares the school's graduates to participate effectively and responsibly in the legal profession.*

***Interpretation 302-9:***
*The substantial instruction in the history, structure, values, rules, and responsibilities of the legal profession and its members required by Standard 302(a)(5) includes instruction in matters such as the law of lawyering and the Model Rules of Professional Conduct of the American Bar Association.*

## Standard 303. *ACADEMIC STANDARDS AND ACHIEVEMENTS*

**(a) A law school shall have and adhere to sound academic standards, including clearly defined standards for good standing and graduation.**

**(b) A law school shall monitor students' academic progress and achievement from the beginning of and periodically throughout their studies.**

**(c) A law school shall not continue the enrollment of a student whose inability to do satisfactory work is sufficiently manifest so that the student's continuation in school would inculcate false hopes, constitute economic exploitation, or detrimentally affect the education of other students.**

*Interpretation 303-1:*
*Scholastic achievement of students shall be evaluated by examinations of suitable length and complexity, papers, projects, or by assessment of performances of students in the role of lawyers.*

*Interpretation 303-2:*
*A law school shall provide academic advising to students to communicate effectively to them the school's academic standards and graduation requirements, and guidance regarding course selection and sequencing. Academic advising should include assisting each student with planning a program of study consistent with that student's goals.*

*Interpretation 303-3:*
*A law school shall provide the academic support necessary to assure each student a satisfactory opportunity to complete the program, graduate, and become a member of the legal profession. This obligation may require a school to create and maintain a formal academic support program.*

## Standard 304. *COURSE OF STUDY AND ACADEMIC CALENDAR*

**(a) A law school shall have an academic year of not fewer than 130 days on which classes are regularly scheduled in the law school, extending into not fewer than eight calendar months. The law school shall provide adequate time for reading periods, examinations, and breaks, but such time does not count toward the 130-day academic year requirement.**

**(b) A law school shall require, as a condition for graduation, successful completion of a course of study in residence of not fewer than 58,000 minutes of instruction time, except as otherwise provided. At least 45,000 of these minutes shall be by attendance in regularly scheduled class sessions at the law school.**

**(c) A law school shall require that the course of study for the J.D. degree be completed no earlier than 24 months and no later than 84 months after a student has commenced law study at the law school or a law school from which the school has accepted transfer credit.**

**(d) A law school shall require regular and punctual class attendance.**

**(e) A law school shall not permit a student to be enrolled at any time in coursework that, if successfully completed, would exceed 20 percent of the total coursework required by that school for graduation (or a proportionate number for schools on other academic schedules, such as a quarter system).**

**(f) A student may not be employed more than 20 hours per week in any week in which the student is enrolled in more than twelve class hours.**

**Interpretation 304-1:**
This Standard establishes a minimum period of academic instruction as a condition for graduation. While the academic year is typically divided into two equal terms of at least thirteen weeks, that equal division is not required. The Standard accommodates deviations from a conventional semester system, including quarter systems, trimesters, and mini- terms.

**Interpretation 304-2:**
A law school may not count more than five class days each week toward the 130-day requirement.

**Interpretation 304-3:**
In calculating the 45,000 minutes of "regularly scheduled class sessions" for the purpose of Standard 304(b), the time may include:

(a) coursework at a law school for which a student receives credit toward the J.D. degree by the law school, so long as that work itself meets the requirements of Standard 304;

(b) coursework for which a student receives credit toward the J.D. degree that is work done in a foreign study program that qualifies under Standard 307;

(c) law school coursework that meets the requirements of Standard 306(c);

(d) in a seminar or other upper-level course other than an independent research course, the minutes allocated for preparation of a substantial paper or project if the time and effort required and anticipated educational benefit are commensurate with the credit awarded; and

(e) in a law school clinical course, the minutes allocated for clinical work so long as (i) the clinical course includes a classroom instructional component, (ii) the clinical work is done under the direct supervision of a member of the law school faculty or instructional staff whose primary professional employment is with the law school, and (iii) the time and effort required and anticipated educational benefit are commensurate with the credit awarded.

A law school shall not include in the 45,000 minutes required by Standard 304(b) to be by attendance in regularly scheduled class sessions at the law school any other coursework, including but not limited to (i) work qualifying for credit under Standard 305; (ii) coursework completed in another department, school or college of the university with which the law school is affiliated or at another institution of higher learning; and (iii) co-curricular activities such as law review, moot court, and trial competitions.

**Interpretation 304-4:**
Law schools may find the following examples useful. Law schools on a conventional semester system typically require 700 minutes of instruction time per "credit," exclusive of time for an examination. A quarter hour of credit requires 450 minutes of instruction time, exclusive of time for an examination. To achieve the required total of 58,000 minutes of

*instruction time, a law school must require at least 83 semester hours of credit, or 129 quarter hours of credit.*

*If a law school on a semester system offers classes in units of 50 minutes per credit, it can provide 700 minutes of instruction in 14 classes. If such a law school offers classes in units of 55 minutes per class, it can provide 700 minutes of instruction in 13 classes. If such a law school offers classes in units of 75 minutes per class, it can provide 700 minutes of instruction in 10 classes.*

*If a law school on a quarter system offers classes in units of 50 minutes per class, it can provide 450 minutes of instruction in 9 classes. If such a law school offers classes in units of 65 minutes per class, it can provide 450 minutes of instruction in 8 classes. If such a law school offers classes in units of 75 minutes per class, it can provide 450 minutes of instruction in 6 classes.*

*In all events, the 130-day requirement of Standard 304(a) and the 58,000-minute requirement of Standard 304(b) should be understood as separate and independent requirements.*

**Interpretation 304-5:**
*Credit for a J.D. degree shall only be given for course work taken after the student has matriculated in a law school. A law school may not grant credit toward the J.D. degree for work taken in a pre-admission program.*

**Interpretation 304-6:**
*A law school shall demonstrate that it has adopted and enforces policies insuring that individual students satisfy the requirements of this Standard, including the implementation of policies relating to class scheduling, attendance, and limitation on employment.*

**Interpretation 304 -7:**
*Subject to the provisions of this Interpretation, a law school shall require a student who has completed work in an LL.M. or other post J.D. program to complete all of the work for which it will award the J.D. degree following the student's regular enrollment in the school's J.D. program. A law school may accept transfer credit as otherwise allowed by the Standards.*

*A law school may award credit toward a J.D. degree for work undertaken in a LL.M. or other post J.D. program offered by it or another law school if:*

*(a) that work was the successful completion of a J.D. course while the student was enrolled in a post-J.D. law program;*

*(b) the law school at which the course was taken has a grading system for LL.M. students in J.D. courses that is comparable to the grading system for J.D. students in the course, and*

*(c) the law school accepting the transfer credit will require that the student successfully complete a course of study that satisfies the requirements of Standards*

*302(a)-(c) and that meets all of the school's requirement for the awarding of the J.D. degree.*

**Standard 305.  *STUDY OUTSIDE THE CLASSROOM***

**(a) A law school may grant credit toward the J.D. degree for courses or a program that permits or requires student participation in studies or activities away from or outside the law school or in a format that does not involve attendance at regularly scheduled class sessions.**

**(b) Credit granted shall be commensurate with the time and effort required and the anticipated quality of the educational experience of the student.**

**(c) Each student's academic achievement shall be evaluated by a faculty member.  For purposes of Standard 305 and its Interpretations, the term "faculty member" means a member of the full-time or part-time faculty.  When appropriate a school may use faculty members from other law schools to supervise or assist in the supervision or review of a field placement program.**

**(d) The studies or activities shall be approved in advance and periodically reviewed following the school's established procedures for approval of the curriculum.**

**(e) A field placement program shall include:**

> **(1) a clear statement of the goals and methods, and a demonstrated relationship between those goals and methods to the program in operation;**

> **(2) adequate instructional resources, including faculty teaching in and supervising the program who devote the requisite time and attention to satisfy program goals and are sufficiently available to students;**

> **(3) a clearly articulated method of evaluating each student's academic performance involving both a faculty member and the field placement supervisor;**

> **(4) a method for selecting, training, evaluating, and communicating with field placement supervisors;**

> **(5) periodic on-site visits or their equivalent by a faculty member if the field placement program awards four or more academic credits (or equivalent) for field work in any academic term or if on-site visits or their equivalent are otherwise necessary and appropriate;**

> **(6) a requirement that students have successfully completed one academic year of study prior to participation in the field placement program;**

> **(7) opportunities for student reflection on their field placement experience, through a seminar, regularly scheduled tutorials, or other means of guided   re-**

flection. **Where a student can earn four or more academic credits (or equiva-lent) in the program for fieldwork, the seminar, tutorial, or other means of guided reflection must be provided contemporaneously.**

*Interpretation 305-1:*
*Activities covered by Standard 305(a) include field placement, moot court, law review, and directed research programs or courses for which credit toward the J.D. degree is granted, as well as courses taken in parts of the college or university outside the law school for which credit toward the J.D. degree is granted.*

*Interpretation 305-2:*
*The nature of field placement programs presents special opportunities and unique challenges for the maintenance of educational quality. Field placement programs accordingly require particular attention from the law school and the Accreditation Committee.*

*Interpretation 305-3:*
*A law school may not grant credit to a student for participation in a field placement program for which the student receives compensation. This interpretation does not preclude reimbursement of reasonable out-of-pocket expenses related to the field placement.*

*Interpretation 305-4:*
*(a) A law school that has a field placement program shall develop, publish and communicate to students and field instructors a statement that describes the educational objectives of the program.*

*(b) In a field placement program, as the number of students involved or the number of credits awarded increases, the level of instructional resources devoted to the program should also increase.*

*Interpretation 305-5:*
*Standard 305 by its own force does not allow credit for Distance Education courses.*

## Standard 306. *DISTANCE EDUCATION*

**(a) A law school may offer credit toward the J.D. degree for study offered through distance education consistent with the provisions of this Standard and Interpretations of this Standard. Such credit shall be awarded only if the academic content, the method of course delivery, and the method of evaluating student performance are approved as part of the school's regular curriculum approval process.**

**(b) Distance education is an educational process characterized by the separation, in time or place, between instructor and student. It includes courses offered principally by means of:**

> **(1) technological transmission, including Internet, open broadcast, closed circuit, cable, microwave, or satellite transmission;**

(2) audio or computer conferencing;

(3) video cassettes or discs; or

(4) correspondence.

(c) A law school may award credit for distance education and may count that credit toward the 45,000 minutes of instruction required by Standard 304(b) if:

(1) there is ample interaction with the instructor and other students both inside and outside the formal structure of the course throughout its duration; and

(2) there is ample monitoring of student effort and accomplishment as the course progresses.

(d) A law school shall not grant a student more than four credit hours in any term, nor more than a total of 12 credit hours, toward the J.D. degree for courses qualifying under this Standard.

(e) No student shall enroll in courses qualifying for credit under this Standard until that student has completed instruction equivalent to 28 credit hours toward the J.D. degree.

(f) No credit otherwise may be given toward the J.D. degree for any distance education course.

*Interpretation 306 -1:*
*To allow the Council and the Standards Review Committee to review and adjust this Standard, law schools shall report each year on the distance education courses that they offer.*

*Interpretation 306-2:*
*Distance education presents special opportunities and unique challenges for the maintenance of educational quality. Distance education accordingly requires particular attention from the law school and by site visit teams and the Accreditation Committee.*

*Interpretation 306-3:*
*Courses in which two-thirds or more of the course instruction consists of regular classroom instruction shall not be treated as "distance education" for purposes of Standards 306(d) and (e) even though they also include substantial on-line interaction or other common components of "distance education" courses so long as such instruction complies with the provisions of subsections (1) and (2) of Standard 306(c).*

*Interpretation 306-4:*
*Law schools shall take steps to provide students in distance education courses opportunities to interact with instructors that equal or exceed the opportunities for such interaction with instructors in a traditional classroom setting.*

**Interpretation 306-5:**
*Law schools shall have the technological capacity, staff, information resources, and facilities required to provide the support needed for instructors and students involved in distance education at the school.*

**Interpretation 306-6:**
*Law schools shall establish mechanisms to assure that faculty who teach distance education courses and students who enroll in them have the skills and access to the technology necessary to enable them to participate effectively.*

**Interpretation 306-7:**
*Faculty approval of credit for a distance education course shall include a specific explanation of how the course credit was determined. Credit shall be awarded in a manner consistent with the requirement of Interpretation 304-5 that requires 700 minutes of instruction for each credit awarded.*

**Interpretation 306-8:**
*A law school that offers more than an incidental amount of credit for distance education shall adopt a written plan for distance education at the law school and shall periodically review the educational effectiveness of its distance education courses and programs.*

**Interpretation 306-9:**
*"Credits" in this Standard means semester hour credits as provided in Interpretation 304-5. Law schools that use quarter hours of credit shall convert these credits in a manner that is consistent with the provisions of Interpretation 304-5.*

## Standard 307.  *PARTICIPATION IN STUDIES OR ACTIVITIES IN A FOREIGN COUNTRY*

**A law school may grant credit for student participation in studies or activities in a foreign country only if the studies or activities are approved in accordance with the Rules of Procedure and Criteria as adopted by the Council.**

**Interpretation 307-1:**
*In addition to studies or activities covered by Criteria adopted by the Council, a law school may grant credit for (a) studies or activities in a foreign country that meet the requirements of Standard 305 and (b) brief visits to a foreign country that are part of a law school course approved through the school's regular curriculum approval process.*

## Standard 308.  *DEGREE PROGRAMS IN ADDITION TO J.D.*

**A law school may not establish a degree program other than its J.D. degree program without obtaining the Council's prior acquiescence.  A law school may not establish a degree program in addition to its J.D. degree program unless the school is fully**

approved.  **The additional degree program may not detract from a law school's ability to maintain a J.D. degree program that meets the requirements of the Standards.**

*Interpretation 308-1:*
*Reasons for withholding acquiescence in the establishment of an advanced degree program include:*

> *(1) Lack of sufficient full-time faculty to conduct the J.D. degree program;*
>
> *(2) Lack of adequate physical facilities, which has a negative and material effect on the education students receive;*
>
> *(3) Lack of an adequate law library to support both a J.D. and an advanced degree program; and*
>
> *(4) A J.D. degree curriculum lacking sufficient diversity and richness in course offerings.*

*Interpretation 308-2:*
*Acquiescence in a degree program other than the first degree in law is not an approval of the program itself, and, therefore, a school may not announce that the program is approved by the American Bar Association.*

# CHAPTER 4

## THE FACULTY

### Standard 401.  *QUALIFICATIONS*

A law school shall have a faculty whose qualifications and experience are appropriate to the stated mission of the law school and to maintaining a program of legal education consistent with the requirements of Standards 301 and 302. The faculty shall possesses a high degree of competence, as demonstrated by its education, experience in teaching or practice, teaching effectiveness, and scholarly research and writing.

### Standard 402.  *SIZE OF FULL-TIME FACULTY*

(a) A law school shall have a sufficient number of full-time faculty to fulfill the requirements of the Standards and meet the goals of its educational program.  The number of full-time faculty necessary depends on:

(1) the size of the student body and the opportunity for students to meet individually with and consult faculty members;

(2) the nature and scope of the educational program; and

(3) the opportunities for the faculty adequately to fulfill teaching obligations, conduct scholarly research, and participate effectively in the governance of the law school and in service to the legal profession and the public.

(b) A full-time faculty member is one whose primary professional employment is with the law school and who devotes substantially all working time during the academic year to the responsibilities described in Standard 404(a), and whose outside professional activities, if any, are limited to those that relate to major academic interests or enrich the faculty member's capacity as a scholar and teacher, are of service to the legal profession and the public generally, and do not unduly interfere with one's responsibility as a faculty member.

*Interpretation 402-1:*
*In determining whether a law school complies with the Standards, the ratio of the number of full-time equivalent students to the number of full-time equivalent faculty members is considered.*

*(1) In computing the student/faculty ratio, full-time equivalent teachers are those who are employed as full-time teachers on tenure track or its equivalent who shall be counted as one each plus those who constitute "additional teaching resources" as defined below.  No limit is imposed on the total number of teachers that a school may employ as additional teaching resources, but these additional teaching resources shall be counted at a fraction of less than 1 and may constitute in the aggregate up to 20 percent of the full-time faculty for purposes of calculating the student/faculty ratio.*

(A) Additional teaching resources and the proportional weight assigned to each category include:

(i) teachers on tenure track or its equivalent who have administrative duties beyond those normally performed by full-time faculty members: 0.5;

(ii) clinicians and legal writing instructors not on tenure track or its equivalent who teach a full load: 0.7; and

(iii) adjuncts, emeriti faculty who teach, non-tenure track administrators who teach, librarians who teach, and teachers from other units of the university: 0.2.

(B) These norms have been selected to provide a workable framework to recognize the effective contributions of additional teaching resources. To the extent a law school has types or categories of teachers not specifically described above, they shall be counted as appropriate in accordance with the weights specified above. It is recognized that the designated proportional weights may not in all cases reflect the contributions to the law school of particular teachers. In exceptional cases, a school may seek to demonstrate to site evaluation teams and the Accreditation Committee that these proportional weights should be changed to weigh contributions of individual teachers

(2) For the purpose of computing the student/faculty ratio, a student is considered full-time or part-time as determined by the school, provided that no student who is enrolled in fewer than ten credit hours in a term shall be considered a full-time student, and no student enrolled in more than 13 credit hours shall be considered a part-time student. A part-time student is counted as a two-thirds equivalent student.

(3) If there are graduate or non-degree students whose presence might result in a dilution of J.D. program resources, the circumstances of the individual school are considered to determine the adequacy of the teaching resources available for the J.D. program.

**Interpretation 402-2:**
Student/faculty ratios are considered in determining a law school's compliance with the Standards.

(1) A ratio of 20:1 or less presumptively indicates that a law school complies with the Standards. However, the educational effects shall be examined to determine whether the size and duties of the full-time faculty meet the Standards.

(2) A ratio of 30:1 or more presumptively indicates that a law school does not comply with the Standards.

*(3) At a ratio of between 20:1 and 30:1 and to rebut the presumption created by a ratio of 30:1 or greater, the examination will take into account the effects of all teaching resources on the school's educational program, including such matters as quality of teaching, class size, availability of small group classes and seminars, student/faculty contact, examinations and grading, scholarly contributions, public service, discharge of governance responsibilities, and the ability of the law school to carry out its announced mission.*

**Interpretation 402-3:**
*A full-time faculty member who is teaching an additional full-time load at another law school may not be considered as a full-time faculty member at either institution.*

**Interpretation 402-4:**
*Regularly engaging in law practice or having an ongoing relationship with a law firm or other business creates a presumption that a faculty member is not a full-time faculty member under this Standard. This presumption may be rebutted if the law school is able to demonstrate that the individual has a full-time commitment to teaching, research, and public service, is available to students, and is able to participate in the governance of the institution to the same extent expected of full-time faculty.*

## Standard 403.  *INSTRUCTIONAL ROLE OF FACULTY*

**(a) The full-time faculty shall teach the major portion of the law school's curriculum, including substantially all of the first one-third of each student's coursework.**

**(b) A law school shall to ensure effective teaching by all persons providing instruction to students.**

**(c) A law school should include experienced practicing lawyers and judges as teaching resources to enrich the educational program.  Appropriate use of practicing lawyers and judges as faculty requires that a law school shall provide them with orientation, guidance, monitoring, and evaluation.**

**Interpretation 403-1:**
*The full-time faculty's teaching responsibility will usually be determined by the proportion of student credit hours taught by full-time faculty in each of the law school's programs or divisions (such as full-time, part-time evening study, and part-time weekend study). For purposes of Standard 403(a), a faculty member is considered full-time if that person's primary professional employment is with the law school.*

**Interpretation 403-2:**
*Efforts to ensure teaching effectiveness may include: a faculty committee on effective teaching, class visitations, critiques of videotaped teaching, institutional review of student evaluation of teaching, colloquia on effective teaching, and recognition of creative scholarship in law school teaching methodology. A law school shall provide all new faculty members with orientation, guidance, mentoring, and periodic evaluation.*

**Standard 404. *RESPONSIBILITIES OF FULL-TIME FACULTY***

(a) A law school shall establish policies with respect to a full-time faculty member's responsibilities in teaching, scholarship, service to the law school community, and professional activities outside the law school. The policies need not seek uniformity among faculty members, but should address:

(1) Faculty teaching responsibilities, including carrying a fair share of the law school's course offerings, preparing for classes, being available for student consultation, participating in academic advising, and creating an atmosphere in which students and faculty may voice opinions and exchange ideas;

(2) Research and scholarship, and integrity in the conduct of scholarship, including appropriate use of student research assistants, acknowledgment of the contributions of others, and responsibility of faculty members to keep abreast of developments in their specialties;

(3) Obligations to the law school and university community, including participation in the governance of the law school;

(4) Obligations to the profession, including working with the practicing bar and judiciary to improve the profession; and

(5) Obligations to the public, including participation in pro bono activities.

(b) A law school shall evaluate periodically the extent to which each faculty member discharges her or his responsibilities under policies adopted pursuant to Standard 404(a).

**Standard 405. *PROFESSIONAL ENVIRONMENT***

(a) A law school shall establish and maintain conditions adequate to attract and retain a competent faculty.

(b) A law school shall have an established and announced policy with respect to academic freedom and tenure of which Appendix I herein is an example but is not obligatory.

(c) A law school shall afford to full-time clinical faculty members a form of security of position reasonably similar to tenure, and non-compensatory perquisites reasonably similar to those provided other full-time faculty members. A law school may require these faculty members to meet standards and obligations reasonably similar to those required of other full-time faculty members. However, this Standard does not preclude a limited number of fixed, short-term appointments in a clinical program predominantly staffed by full-time faculty members, or in an experimental program of limited duration.

(d) A law school shall afford legal writing teachers such security of position and other rights and privileges of faculty membership as may be necessary to (1) attract and retain a faculty that is well qualified to provide legal writing instruction as required by Standard 302(a)(2), and (2) safeguard academic freedom.

*Interpretation 405-1:*
*A fixed limit on the percent of a law faculty that may hold tenure under any circumstances violates the Standards.*

*Interpretation 405-2:*
*A law faculty as professionals should not be required to be a part of the general university bargaining unit.*

*Interpretation 405-3:*
*A law school shall have a comprehensive system for evaluating candidates for promotion and tenure or other forms of security of position, including written criteria and procedures that are made available to the faculty.*

*Interpretation 405-4:*
*A law school not a part of a university in considering and deciding on appointment, termination, promotion, and tenure of faculty members should have procedures that contain the same principles of fairness and due process that should be employed by a law school that is part of a university. If the dean and faculty have made a recommendation that is unfavorable to a candidate, the candidate should be given an opportunity to appeal to the president, chairman, or governing board.*

*Interpretation 405-5:*
*If the dean and faculty have determined the question of responsibility for examination schedules and the schedule has been announced by the authority responsible for it, it is not a violation of academic freedom for a member of the law faculty to be required to adhere to the schedule.*

*Interpretation 405-6:*
*A form of security of position reasonably similar to tenure includes a separate tenure track or a program of renewable long-term contracts . Under a separate tenure track, a full-time clinical faculty member, after a probationary period reasonably similar to that for other full-time faculty, may be granted tenure. After tenure is granted, the faculty member may be terminated only for good cause, including termination or material modification of the entire clinical program.*

*A program of renewable long-term contracts shall provide that, after a probationary period reasonably similar to that for other full-time faculty, during which the clinical faculty member may be employed on short-term contracts, the services of a faculty member in a clinical program may be either terminated or continued by the granting of a long-term renewable contract. For the purposes of this Interpretation, "long-term contract" means at least a five-year contract that is presumptively renewable or other arrangement sufficient to ensure academic freedom. During the initial long-term contract or any renewal period, the*

*contract may be terminated for good cause, including termination or material modification of the entire clinical program.*

**Interpretation 405-7:**
*In determining if the members of the full-time clinical faculty meet standards and obligations reasonably similar to those provided for other full-time faculty, competence in the areas of teaching and scholarly research and writing should be judged in terms of the responsibilities of clinical faculty.   A law school should develop criteria for retention, promotion, and security  of employment of full-time clinical faculty.*

**Interpretation 405-8:**
*A law school shall afford to full-time clinical faculty members participation in faculty meetings, committees, and other aspects of law school governance in a manner reasonably similar to other full-time faculty members.  This Interpretation does not apply to those persons referred to in the last sentence of Standard 405(c).*

**Interpretation 405-9:**
*Subsection (d) of this Standard does not preclude the use of short-term contracts for legal writing teachers, nor does it preclude law schools from offering fellowship programs designed to produce candidates for full-time teaching by offering individuals supervised teaching experience.*

# CHAPTER 5

## ADMISSIONS AND STUDENT SERVICES

### Standard 501. *ADMISSIONS*

**(a)  A law school's admission policies shall be consistent with the objectives of its educational program and the resources available for implementing those objectives.**

**(b)  A law school shall not admit applicants who do not appear capable of satisfactorily completing its educational program and being admitted to the bar.**

*Interpretation 501-1:*
*A law school may not permit financial considerations detrimentally to affect its admission and retention policies and their administration.  A law school may face a conflict of interest whenever the exercise of sound judgment in the application of admission policies or academic standards and retention policies might reduce enrollment below the level necessary to support the program.*

*Interpretation 501-2:*
*A law school's admission policies shall be consistent with Standards 201, 211 and 301.*

### Standard 502.  *EDUCATIONAL REQUIREMENTS*

**(a) A law school shall require for admission to its J.D. degree program a bachelor's degree, or successful completion of three-fourths of the work acceptable for a bachelor's degree, from an institution that is accredited by an accrediting agency recognized by the Department of Education.**

**(b)  In an extraordinary case, a law school may admit to its J.D. degree program an applicant who does not possess the educational requirements of subsection (a) if the applicant's experience, ability, and other characteristics clearly show an aptitude for the study of law.  The admitting officer shall sign and place in the admittee's file a statement of the considerations that led to the decision to admit the applicant.**

*Interpretation 502-1:*
*Before an admitted student registers, or within a reasonable time thereafter, a law school shall have on file the student's official transcript showing receipt of a bachelor's degree, if any, and all academic work undertaken.  "Official transcript" means a transcript certified by the issuing school to the admitting school or delivered to the admitting school in a sealed envelope with seal intact.  A copy supplied by the Law School Data Assembly Service is not an official transcript, even though it is adequate for preliminary determination of admission.*

## Standard 503.  *ADMISSION TEST*

**A law school shall require each applicant to take a valid and reliable admission test to assist the school in assessing the applicant's capability of satisfactorily completing the school's educational program.**

### Interpretation 503-1:
*A law school that uses an admission test other than the Law School Admission Test sponsored by the Law School Admission Council shall establish that such other test is a valid and reliable test to assist the school in assessing an applicant's capability to satisfactorily complete the school's educational program.*

### Interpretation 503-2:
*This Standard does not prescribe the particular weight that a law school should give to an applicant's admission test score in deciding whether to admit or deny admission to the applicant. Other relevant factors that may be taken into account include undergraduate course of study and grade point average, extracurricular activities, work experience, performance in other graduate or professional programs, relevant demonstrated skills, and obstacles overcome.*

### Interpretation 503-3:
*A pre-admission program of coursework taught by members of the law school's full-time faculty and culminating in an examination or examinations, offered to some or all applicants prior to a decision to admit to the J.D. program, also may be useful in assessing the capability of an applicant to satisfactorily complete the school's educational program, to be admitted to the bar, and to become a competent professional.*

## Standard 504.  *CHARACTER AND FITNESS*

**(a )  A law school shall advise each applicant that there are character, fitness and other qualifications for admission to the bar and encourage the applicant, prior to matriculation, to determine what those requirements are in the state(s) in which the applicant intends to practice.  The law school should, as soon after matriculation as is practicable, take additional steps to apprise entering students of the importance of determining the applicable character, fitness and other qualifications.**

**(b)  The law school may, to the extent it deems appropriate, adopt such tests, questionnaires, or required references as the proper admission authorities may find useful and relevant, in determining the character, fitness or other qualifications of the applicants to the law school.**

**(c)  If a law school considers an applicant's character, fitness or other qualifications, it shall exercise care that the consideration is not used as a reason to deny admission to a qualified applicant because of political, social, or economic views that might be considered unorthodox.**

**Standard 505.  *PREVIOUSLY DISQUALIFIED APPLICANT***

A law school may admit or readmit a student who has been disqualified previously for academic reasons upon an affirmative showing that the student possesses the requisite ability and that the prior disqualification does not indicate a lack of capacity to complete the course of study at the admitting school. In the case of admission to a law school other than the disqualifying school, this showing shall be made either by a letter from the disqualifying school or, if two or more years have elapsed since that disqualification, by the nature of interim work, activity, or studies indicating a stronger potential for law study.  For every admission or readmission of a previously disqualified individual, a statement of the considerations that led to the decision shall be placed in the admittee's file.

*Interpretation 505-1:*
*The two year period begins on the date of the original determination to disqualify the student for academic reasons.*

*Interpretation 505-2:*
*A student who enrolled in a pre-admission program but was not granted admission is not a student who was disqualified for academic reasons under this Standard.*


**Standard 506.  *APPLICANTS FROM STATE-ACCREDITED LAW SCHOOLS***

(a)  A law school may admit a student with advanced standing and allow credit for studies at a state-accredited law school if:

(1)  the studies were "in residence" as provided in Standard 304, or qualify for credit under Standard 305; and

(2)  the content of the studies was such that credit therefor would have been granted towards satisfaction of degree requirements at the admitting school.

(b)  Advanced standing and credit hours granted for study at a state-accredited law school may not exceed one-third of the total required by an admitting school for its J.D. degree.


**Standard 507.  *APPLICANTS FROM FOREIGN LAW SCHOOLS***

(a)  A law school may admit a student with advanced standing and allow credit for studies at a law school outside the United States if:

(1)  the studies were "in residence" as provided in Standard 304, or qualify for credit under Standard 305;

(2)  the content of the studies was such that credit therefor would have been granted towards satisfaction of degree requirements at the admitting school; and

(3)  the admitting school is satisfied that the quality of the educational program at the foreign law school was at least equal to that required by an approved school.

(b)  Advanced standing and credit hours granted for foreign study may not exceed one-third of the total required by an admitting school for its J.D. degree.

*Interpretation 507-1:*
*This Standard applies only to graduates of foreign law schools or students enrolled in a first degree granting law program in a foreign educational institution.*

## Standard 508. *ENROLLMENT OF NON-DEGREE CANDIDATES*

Without requiring compliance with its admission standards and procedures, a law school may enroll individuals in a particular course or limited number of courses, as auditors, non-degree candidates, or candidates for a degree other than a law degree, provided that such enrollment does not adversely affect the quality of the course or the law school program.

## Standard 509.  *BASIC CONSUMER INFORMATION*

A law school shall publish basic consumer information.  The information shall be published in a fair and accurate manner reflective of actual practice.

*Interpretation 509-1:*
*The following categories of consumer information are considered basic:*

> *(1) admission data;*

> *(2) tuition, fees, living costs, financial aid, and refunds;*

> *(3) enrollment data and graduation rates;*

> *(4) composition and number of faculty and administrators;*

> *(5) curricular offerings;*

> *(6) library resources;*

> *(7) physical facilities; and*

> *(8) placement rates and bar passage data.*

**Interpretation 509-2:**
*To comply with its obligation to publish basic consumer information under the first sentence of this Standard, a law school may either provide the information to a publication designated by the Council or publish the information in its own publication. If the school chooses to meet this obligation through its own publication, the basic consumer information shall be published in a manner comparable to that used in the Council-designated publication, and the school shall provide the publication to all of its applicants.*

**Interpretation 509-3:**
*Standard 509 requires a law school fairly and accurately to report basic consumer information whenever and wherever that information is reported or published. A law school's participation in the Council-designated publication referred to in Interpretation 509-2 and its provision of fair and accurate information for that book does not excuse a school from the obligation to report fairly and accurately all basic consumer information published in other places or for other purposes.*

**Interpretation 509-4:**
*All law schools shall have and make publicly available a student tuition and fee refund policy. This policy shall contain a complete statement of all student tuition and fees and a schedule for the refund of student tuition and fees.*

**Interpretation 509-5:**
*If a law school elects to make a public disclosure of its status as a law school approved by the Council of the Section of Legal Education and Admissions to the Bar of the American Bar Association, it shall do so accurately and shall include the name, address and telephone number of the Council of the Section of Legal Education and Admissions to the Bar of the American Bar Association.*

## Standard 510.  *STUDENT LOAN PROGRAMS*

**A law school shall take reasonable steps to minimize student loan defaults, including provision of debt counseling at the inception of a student's loan obligations and prior to graduation.**

**Interpretation 510-1:**
*The student loan default rates of a law school's graduates, including any results of financial or compliance audits and reviews, shall be considered in assessing the extent to which a law school complies with this Standard.*

**Interpretation 510-2:**
*The law school's obligation shall be satisfied if the university, of which the law school is a part, provides to law students the reasonable steps described in this Standard.*

**Standard 511.  *STUDENT SUPPORT SERVICES***

A law school shall provide all its students, regardless of enrollment or scheduling option, with basic student services, including maintenance of accurate student records, academic advising and counseling, financial aid counseling, and an active career counseling service to assist students in making sound career choices and obtaining employment. If a law school does not provide these types of student services directly, it must demonstrate that its students have reasonable access to such services from the university of which it is a part or from other sources.

# CHAPTER 6

## LIBRARY AND INFORMATION RESOURCES

### Standard 601.  *GENERAL PROVISIONS*

(a)  A law school shall maintain a law library that is an active and responsive force in the educational life of the law school.  A law library's effective support of the school's teaching, scholarship, research and service programs requires a direct, continuing, and informed relationship with the faculty, students, and administration of the law school.

(b)  A law library shall have sufficient financial resources to support the law school's teaching, scholarship, research, and service programs.  These resources shall be supplied on a consistent basis.

(c)  A law school shall keep its library abreast of contemporary technology and adopt it when appropriate.

*Interpretation 601-1:*
*Cooperative agreements may be considered when determining whether faculty and students have efficient and effective access to the resources necessary to meet the law school's educational needs. Standard 601 is not satisfied solely by arranging for students and faculty to have access to other law libraries within the region, or by providing electronic access.*

### Standard 602.  *ADMINISTRATION*

(a)  A law school shall have sufficient administrative autonomy to direct the growth and development of the law library and to control the use of its resources.

(b)  The dean and the director of the law library, in consultation with the faculty of the law school, shall determine library policy.

(c)  The directory of the law library and the dean are responsible for the selection and retention of personnel, the provision of library services, and collection development and maintenance.

(d)  The budget for the law library should be determined as part of, and administered in the same manner as, the law school budget.

*Interpretation 602-1:*
*This Standard recognizes that substantial operating autonomy rests with the dean, the director of the law library and the faculty of a law school with regard to the operation of the law school library.  The Standards require that decisions that materially affect the law library be enlightened by the needs of the law school educational program.  This envisions law library participation in university library decisions that may affect the law library. While the preferred structure for administration of a law school library is one of law school administration, a law school library may be administered as part of a general university*

*library system if the dean, the director of the law library, and faculty are responsible for the determination of basic law library policies.*

## Standard 603.  *DIRECTOR OF THE LAW LIBRARY*

**(a)  A law library shall be administered by a full-time director whose principal responsibility is the management of the law library.**

**(b)  The selection and retention of the director of the law library shall be determined by the law school.**

**(c)  A director of a law library should have a law degree and a degree in library or information science and shall have a sound knowledge of and experience in library administration.**

**(d)  Except in extraordinary circumstances, a law library director shall hold a law faculty appointment with security of faculty position.**

*Interpretation 603-1:*
*The director of the law library is responsible for all aspects of the management of the law library including budgeting, staff, collections, services and facilities.*

*Interpretation 603-2:*
*The dean and faculty of the law school shall select the director of the law library.*

*Interpretation 603-3:*
*The granting of faculty appointment to the director of the law library under this Standard normally is a tenure or tenure-track appointment.  If a director is granted tenure, this tenure is not in the administrative position of director.*

*Interpretation 603-4:*
*It is not a violation of Standard 603(a) for the director of the law library also to have other administrative or teaching responsibilities, provided sufficient resources and staff support are available to ensure effective management of library operations.*

## Standard 604.  *PERSONNEL*

**The law library shall have a competent staff, sufficient in number to provide appropriate library and informational resource services.**

*Interpretation 604-1:*
*Factors relevant to the number of librarians and informational resource staff needed to meet this Standard include the following:  the number of faculty and students, research programs of faculty and students, a dual division program in the school, graduate programs of the school, size and growth rate of the collection, range of services offered by the staff, formal teaching assignments of staff members, and responsibilities for providing informational resource services.*

**Standard 605.  *SERVICES***

A law library shall provide the appropriate range and depth of reference, instructional, bibliographic, and other services to meet the needs of the law school's teaching, scholarship, research, and service programs.

*Interpretation 605-1:*
*Appropriate services include having adequate reference services, providing access (such as indexing, cataloging, and development of search terms and methodologies) to the library's collection and other information resources, offering interlibrary loan and other forms of document delivery, enhancing the research and bibliographic skills of students, producing library publications, and creating other services to further the law school's mission.*

**Standard 606.  *COLLECTION***

(a)  The law library shall provide a core collection of essential materials accessible in the law library.

(b)  In addition to the core collection of essential materials, a law library shall also provide a collection that, through ownership or reliable access,

(1)  meets the research needs of the law school's students, satisfies the demands of the law school curriculum, and facilitates the education of its students;

(2)  supports the teaching, scholarship, research and service interests of the faculty; and

(3)  serves the law school's special teaching, scholarship, research, and service objectives.

(c)  A law library shall formulate and periodically update a written plan for development of the collection.

(d)  A law library shall provide suitable space and adequate equipment to access and use all information in whatever formats are represented in the collection.

*Interpretation 606-1:*
*All materials necessary to the programs of the law school shall be complete and current and in sufficient quantity or with sufficient access to meet faculty and student needs. The library shall ensure continuing access to all information necessary to the law school's programs.*

*Interpretation 606-2:*
*The appropriate mixture of collection formats depends on the needs of the library and its clientele. A collection that consists of a single format may violate Standard 606.*

***Interpretation 606-3:***
*Agreements for the sharing of information resources, except for the core collection, satisfy Standard 606 if:*

> *(1) the agreements are in writing; and*

> *(2) the agreements provide faculty and students with the ease of access and availability necessary to support the programs of the law school.*

***Interpretation 606-4:***
*Off-site storage for non-essential material does not violate the Standards so long as the material is organized and readily accessible in a timely manner.*

***Interpretation 606-5:***
*A law library core collection shall include the following:*

> *(1) all reported federal court decisions and reported decisions of the highest appellate court of each state;*

> *(2) all federal codes and session laws, and at least one current annotated code for each state;*

> *(3) all current published treaties and international agreements of the United States;*

> *(4) all current published regulations (codified and uncodified) of the federal government and the codified regulations of the state in which the law school is located;*

> *(5) those federal and state administrative decisions appropriate to the programs of the law school;*

> *(6) U.S. Congressional materials appropriate to the programs of the law school;*

> *(7) significant secondary works necessary to support the programs of the law school, and*

> *(8) those tools, such as citators and periodical indexes, necessary to identify primary and secondary legal information and update primary legal information.*

***Interpretation 606-6:***
*The dean, faculty, and director of the law library should cooperate in formulation of the collection development plan.*

***Interpretation 606-7:***
*This Standard requires the law library to furnish the equipment to print microform and electronic documents and to view and listen to audio-visual materials in the collection.*

# CHAPTER 7

## FACILITIES

### Standard 701.  *GENERAL REQUIREMENTS*

**A law school shall have physical facilities that are adequate both for its current program of legal education and for growth anticipated in the immediate future.**

**Interpretation 701-1:**
*Inadequate physical facilities are those that have a negative and material effect on the education students receive or fail to provide reasonable access for persons with disabilities. If equal access for persons with disabilities is not readily achievable, the law school shall provide reasonable accommodation to such persons.*

**Interpretation 701-2:**
*Adequate physical facilities shall include:*

> *(1)  suitable class and seminar rooms in sufficient number and size to permit reasonable scheduling of all classes and seminars;*

> *(2)  suitable space for conducting its professional skills courses and programs, including clinical, pretrial, trial, and appellate programs;*

> *(3)  an office for each full-time faculty member adequate for faculty study and for faculty-student conferences, and sufficient office space for part-time faculty members adequate for faculty-student conferences;*

> *(4)  space for co-curricular, as opposed to extra-curricular, activities as defined by the law school;*

> *(5)  suitable space for all staff; and*

> *(6)  suitable space for equipment and records in proximity to the individuals and offices served.*

**Interpretation 701-3:**
*To obtain full approval, a law school's facilities shall be completed and occupied by the law school; plans or construction in progress are insufficient.*

**Interpretation 701-4:**
*A law school must demonstrate that it is and will be housed in facilities that are adequate to carry out its program of legal education. If facilities are leased or financed, factors relevant to whether the law school is or will be housed in facilities that are adequate include overall lease or financing terms and duration, lease renewal terms, termination or foreclosure provisions, and the security of the school's interest.*

*Interpretation 701-5:*
*A law school's physical facilities should be under the exclusive control and reserved for the exclusive use of the law school. If the facilities are not under the exclusive control of the law school or are not reserved for its exclusive use, the arrangements shall permit proper scheduling of all law classes and other law school activities.*

## Standard 702. *LAW LIBRARY*

**The physical facilities for the law library shall be sufficient in size, location, and design in relation to the law school's programs and enrollment to accommodate the law school's students and faculty and the law library's services, collections, staff, operations, and equipment.**

*Interpretation 702-1:*
*A law library shall have sufficient seating to meet the needs of the law school's students and faculty.*

## Standard 703. *RESEARCH AND STUDY SPACE*

**A law school shall provide, on site, sufficient quiet study and research seating for its students and faculty. A law school should provide space that is suitable for group study and other forms of collaborative work.**

## Standard 704. *TECHNOLOGICAL CAPACITIES*

**A law school shall have the technological capacities that are adequate for both its current program of legal education and for program changes anticipated in the immediate future.**

*Interpretation 704-1:*
*Inadequate technological capacities are those that have a negative and material effect on the education students receive.*

*Interpretation 704-2:*
*Adequate technological capacity shall include:*

> *(1) sufficient and up-to-date hardware and software resources and infrastructure to support the teaching, scholarship, research, service and administrative needs of the school;*

> *(2) sufficient staff support and space for staff operations;*

> *(3) sufficient financial resources to adopt and maintain new technology as appropriate.*

# CHAPTER 8

## COUNCIL, AUTHORITY, VARIANCES, AND AMENDMENTS

### Standard 801.  *COUNCIL AUTHORITY*

(a) The Council shall have the authority to grant or deny a law school's application for provisional or full approval or to withdraw provisional or full approval from a law school.  A decision of the Council to grant or withdraw provisional or full approval shall not become effective until it has been reviewed by the House.  Review of such a decision by the House shall be conducted pursuant to the procedures set forth in the Rules of Procedure of the House and the Rules of Procedure for Approval of Law Schools.

(b)  The Council shall have the authority to adopt, revise, amend or repeal the Standards, Interpretations and Rules.  A decision of the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules shall not become effective until it has been reviewed by the House.  Review of such decisions by the House shall be conducted pursuant to the procedures set forth in Standard 803 and the Rules of Procedure of the House.

### Standard 802.  *VARIANCE*

A law school proposing to offer a program of legal education a portion of which is inconsistent with a Standard may apply for a variance.  If the Council finds that the proposal is nevertheless consistent with the general purposes of the Standards, the Council may grant the variance and shall impose the conditions and time limits it considers appropriate.

### Standard 803.  *AMENDMENT OF STANDARDS, INTERPRETATIONS, RULES AND POLICIES*

(a) A decision by the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules does not become effective until it has been reviewed by the House.  After the meeting of the Council at which it decides to adopt, revise, amend or repeal the Standards, Interpretations or Rules, the Chairperson of the Council shall furnish a written statement of the Council action to the House.

(b) Once the action of the Council is placed on the calendar of a meeting of the House, the House shall at that meeting either agree with the Council's decision or refer the decision back to the Council for further consideration.  If the House refers a decision back to the Council, the House shall provide the Council with a statement setting forth the reasons for its referral.

(c) A decision by the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules is subject to a maximum of two referrals back to the Council by the House. If the House refers a Council decision back to the Council twice, then the decision of the Council following the second referral will be final and will not be subject to further review by the House.

(d) Any member of the Association may propose an amendment, whether by revision, addition, or repeal, of the Standards, Interpretations, or Rules by submitting it and a statement of its purposes to the Council. The Council shall consider the proposed amendment at the next Council meeting held 30 or more days thereafter and may consider any other proposed amendment. In its consideration, the Council may refer the proposal to the Standards Review Committee and other committees for recommendation. If the proposed amendment is not adopted by the Council, the Council shall inform the proposer of its action and the reasons therefor.

## APPENDIX 1

The purpose of this statement is to promote public understanding and support of academic freedom and tenure and agreement upon procedures to assure them in colleges and universities. Institutions of higher education are conducted for the common good and not to further the interest of either the individual teacher or the institution as a whole. The common good depends upon the free search for truth and its free exposition.

Academic freedom is essential to these purposes and applies to both teaching and research. Freedom in research is fundamental to the advancement of truth. Academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher in teaching and of the student to freedom in learning. It carries with it duties correlative with rights.

Tenure is a means to certain ends; specifically: (1) freedom of teaching and research and of extramural activities, and (2) a sufficient degree of economic security to make the profession attractive to men and women of ability. Freedom and economic security, hence, tenure, are indispensable to the success of an institution in fulfilling its obligations to its students and to society.

**Academic Freedom**

The teacher[1] is entitled to full freedom in research and in the publication of the results, subject to the adequate performance of his other academic duties; but research for pecuniary return should be based upon an understanding with the authorities of the institution.

The teacher is entitled to freedom in the classroom in discussing his subject, but he should be careful not to introduce into his teaching controversial matter which has no relation to his subject. Limitations of academic freedom because of religious or other aims of the institution should be clearly stated in writing at the time of the appointment.

The college or university teacher is a citizen, a member of a learned profession, and an officer of an educational institution. When he speaks or writes as a citizen, he should be free from institutional censorship or discipline, but his special position in the community imposes special obligations. As a man of learning and an educational officer, he should remember that the public may judge his profession and his institution by his utterances. Hence, he should at all times be accurate, should exercise appropriate restraint, should show respect for the opinions of others, and should make every effort to indicate that he is not an institutional spokesman.

---

[*]    The text of the statement follows the "1940 Statement of Principles on Academic Freedom and Tenure" of the American Association of University Professors.

[1]    The word teacher as used in this document is understood to include the investigator who is attached to an academic institution without teaching duties.

**Academic Tenure**

After the expiration of a probationary period, teachers or investigators should have permanent or continuous tenure, and their services should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies.

In the interpretation of this principle it is understood that the following represents acceptable academic practice:

(1) The precise terms and conditions of every appointment should be stated in writing and be in the possession of both institution and teacher before the appointment is consummated.

(2) Beginning with appointment to the rank of full-time instructor or a higher rank, the probationary period should not exceed seven years, including within this period full-time service in all institutions of higher education; but subject to the proviso that when, after a term of probationary service of more than three years in one or more institutions, a teacher is called to institution it may be agreed in writing that his new appointment is for a probationary period of not more than four years, even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of seven years. Notice should be given at least one year prior to the expiration of the probationary period if the teacher is not to be continued in service after the expiration of that period.

(3) During the probationary period a teacher should have the academic freedom that all other members of the faculty have.

(4) Termination for cause of a continuous appointment, or the dismissal for cause of a teacher previous to the expiration of a term appointment, should, if possible, be considered by both a faculty committee and the governing board of the institution. In all cases where the facts are in dispute, the accused teacher should be informed before the hearing in writing of the charges against him and should have the opportunity to be heard in his own defense by all bodies that pass judgment upon his case. He should be permitted to have with him an adviser of his own choosing who may act as counsel. There should be a full stenographic record of the hearing available to the parties concerned. In the hearing of charges of incompetence the testimony should include that of teachers and other scholars, either from his own or from other institutions. Teachers on continuous appointment who are dismissed for reasons not involving moral turpitude should receive their salaries for at least a year from the date of notification of dismissal whether or not they are continued in their duties at the institution.

(5) Termination of a continuous appointment because of financial exigency should be demonstrably bona fide.

## Key Word Index

*Note: In most cases simply the corresponding Standard(s) is given to note the section wherein the keyword can be found. One should also refer to the corresponding Interpretations for additional information.*

| Key Word | Standard ("i"=Interpretation) |
|---|---|
| **130 days** | 304(a) |
| **45,000 minutes** | 304(b), i304(b) |
| **58,000** | 304(b) |
| **Academic freedom** | 405(b), Appendix 1 |
| **Academic standards** | 204(b), 303 |
| **Academic year** | 304(a) |
| **Accreditation Committee** | 106(1) |
| **Adjuncts, use of** | 403(c) |
| **Admission policies** | 204(b), 210, 211, 501 |
| **Admissions** | |
| basic consumer information | 509 |
| character and fitness | 504 |
| educational requirements | 502 |
| from foreign law schools | 507 |
| from state-accredited law schools | 506 |
| non-degree candidates | 508 |
| previously disqualified | 505 |
| test | 503 |
| **Adoption and amendment of** | |
| **Interpretations and Rules** | 801(b) |
| **Advanced degree in law** | 308 |
| **Advance standing** | |
| state-accredited law schools | 506 |
| foreign law schools | |
| **Affiliated law schools** | |
| university affiliated | 209 |
| non-university affiliated | 208 |
| **Affirmative action** | 211 |

| Key Word | Standard ("i"=Interpretation) |
| --- | --- |
| Alumni | 207 |
| Amendment of Standards, | |
| Interpretations and Rules | 803 |
| Americans with Disabilities Act | 212 |
| Approval | |
| authority to grant | 801(a) |
| full | 103, 801(a) |
| provisional | 102, 801(a) |
| review by the House | 801(a), 803(c) |
| withdrawal of | 102(b), 801(a) |
| Approved schools, listing | 106(2) |
| Association | 106(3) |
| Attendance policies | 304(d) |
| Auditors | 508 |
| Bachelor's degree | 502 |
| Bar admissions | 301, 504 |
| Bar passage | i509(8), i301-3 |
| Bargaining unit | i405-2 |
| Board of visitors | 207 |
| Branch campus | i105-1(13), i105-2, 106(4), 106(14) |
| Budget | 209(d), 602(d) |
| Career services | 210(e), 210(f), 105-3(3), 105-4(1) |
| Character and fitness | 504 |
| Charges and costs assessed | i209-1 |
| Class size | 402-2 |
| Clinical faculty | 405(c), i405-6, i405-7, i405-8 |
| Clinics | 302-5 |
| Co-curricular activities | i301-5, 304-3 |
| Committee of visitors | 207 |
| Community service | 404 |
| Compensation based on class size | i201-2 |
| Consumer information | 509 |
| Consultant | 106(5) |
| Core collection | 606 |

| Key Word | Standard ("i"=Interpretation) |
|---|---|
| Core subjects | 302 |
| Correspondence study | 306 |
| Council authority | 801 |
| Council of the Section | 106(6), 509-5, 801, 803 |
| Course credit | 306-7 |
| Curriculum | 105-3, 105-4, 204(b), 302, 305, 306, 308, 403, 606 |
| Dean | |
| as tenured member of faculty | 205(c) |
| faculty confidence in | 205(d) |
| responsibilities | 106(6), 204(b), 205, 206 |
| selection | 205(d) |
| Debt | 201 |
| Debt counseling | 510 |
| Default rates | 510 |
| Definitions | 106 |
| Directed research | 302(b)(3), i305-1 |
| Disabled persons | 212 |
| Discrimination | 210, 211 |
| Disqualified students | 505 |
| Distance Education | i305-5, 306 |
| Dual division school | 604 |
| Economic exploitation | 303(c) |
| Educational policies | 204, 501 |
| Educational program | 204(b), 301, 302 |
| Education requirements | 502 |
| waiver of | 502(b) |
| Employment limitation | 304(f) |
| Endowments | i209-2 |
| Equality of opportunity | 210, 211 |
| Examination schedules | i405-5 |
| Examinations | i303-1, 304, 402-2(3), i503-3 |
| Exceeding requirements | 104 |
| Externships and other study outside the law school | 305 |
| Facilities | 701, 702, 703, 704 |

| Key Word | Standard ("i"=Interpretation) |
|---|---|
| **Faculty** | |
| clinical | 405(c), i405-6, i405-7, i405-8 |
| competence of | 401, 402, 405 |
| computation of, for student/faculty ratio | i402-3 |
| full-time, defined | 402(c) |
| legal writing | 405(d) |
| minimum size of | 402 |
| part-time | 403(c) |
| professional environment | 405 |
| qualifications | 401 |
| required role | 204(b), 206, 403, 404 |
| selection and retention | 204(b), 209(b), i405-4 |
| selection of a dean | 205(d) |
| size | 402 |
| **Field placement programs** | 305 |
| **Foreign law study** | 307, 507 |
| **Free standing law school** | 203, 208 |
| **Full approval** | |
| authority to determine | 801, 803 |
| regular site evaluation | i202-1 |
| requirements | 101, 102, 103 |
| **Governance** | 203, 204, 402(3), i402-2, i402-4, 404(3) i405-8 |
| **Governing board** | 106(8), 203, 204, 209(d), i405-4 |
| **Grading** | 303, 304-7(b) |
| **Graduation from law school** | |
| delay in conferring degree | i102-9 |
| prerequisites | 302, 304 |
| provisionally approved graduates | i102-4 |
| withdrawal of approval | i103-1 |
| **Group study rooms** | 703 |
| **House of Delegates** | 106(9), 801, 803 |
| **Independent law schools** | 203, 208, i405-4 |
| **Information, submission of** | 101, 102(a) |

| Key Word | Standard ("i"=Interpretation) |
|---|---|
| Instruction by full-time faculty | 403(b) |
| Internships, see externships | 305 |
| Interpretations | 106(10) |
| J.D. degree | 106(11) |
| LL.M. degree | i304-8, 308 |
| Law degree, defined | 106(11) |
| Law librarian | 603, 604 |
| Legal writing | 405(d) |
| Library | |
|     access to additional materials | 606(b), i601-1 |
|     adequacy | 601, 602, 604-606 |
|     administration | 602 |
|     autonomy | 602 |
|     budget | 602(d) |
|     collection | 606 |
|     competent staff | 604 |
|     completeness of materials | 605, 606 |
|     core collection | 606(b) |
|     components of | i606-7 |
|     director | 603 |
|     informational services | 606(b) |
|     library policy | 602(b) |
|     personnel, selection and retention | 602(c), 604 |
|     physical facility | 702, 703 |
|     quality of collection | 606 |
|     relationship with law school | 601(a) |
|     services | 605 |
|     size | 604 |
|     written plan for library support | 606(d) |
| Law school guide | 509 |
| Loan programs | 510 |
| LSAT | 503 |
| Major changes in program or structure | 105 |
| Merger | i105-1 |

| Key Word | Standard ("i"=Interpretation) |
|---|---|
| Mini-semester | i304-1 |
| Minimum requirements | 104 |
| Mission | 202(a) |
| Moot court | i701-2(2), 304-3, 305-1 |
| Non-degree candidates | 508 |
| Non-university affiliated | 208 |
| Objectives | 301 |
| Outside practice by faculty | 402(b) |
| Overhead costs | i209-1 |
| Part-time employment of students | 304(f) |
| Part-time faculty | 403, 305(c) |
| Physical plant | |
|    adequacy | 701-703 |
|    courtroom facilities | i701-2(2) |
|    exclusive control & use | i701-5 |
|    library | 702 |
|    private faculty offices | i701-2(3) |
|    requirements | 701 |
|    secretary, administrative & library personnel | i701-2(5) |
| Placement facilities | 210(e), 210(f) |
| Post-J.D. programs | 308 |
| Pre-admission programs | i304-5, i505-2, 503-3 |
| President | 106(12) |
| Previously disqualified applicant | 505 |
| Pro bono activities | 302(b)(2), 404-5 |
| Professional skills | |
|    curriculum | 302 |
|    evaluation of academic achievement | 303(b), 305(c) |
|    faculty | |
|    competence | i405-7 |
|    governance | i405-8 |
|    security | 405(c) |
|    short term appointments | 405(c) |
| Promotion and tenure | 204(b), i204-1, i405-3, i405-4 |

| Key Word | Standard ("i"=Interpretation) |
|---|---|
| **Provisional approval** | |
| advancing to full approval | 103(a), i102-1 |
| authority to determine | 102(b), 801(a) |
| extension of time | 102(b) |
| graduates | i102-3, i102-4, i103-1 |
| requirements | 102(a) |
| withdrawal of approval | 102(b) |
| **Questionnaires, submission of** | 101 |
| **Readmission** | 505 |
| **Refund policy** | i509-4 |
| **Religious affiliation** | 210 |
| **Required instruction** | 302(a), 302(b) |
| **Research and study space** | 102-7, 104-1, i105-3, i209-2, 703 |
| **Resources** | 201, 209, 209(c), i209-1, i302-2, 305(2), 305-4, i306-5, i402-1, i402-2, 403(c), 501(a), i509-1, 509, 601(b), i601-1, 602(a), 603-4, 605-1, 606-3, i704(2) |
| **Resources generated** | i209-2 |
| **Retention policies** | 303 |
| **Rules** | 106(13) |
| **Scheduling option** | i301-3, i304-6, 511 |
| **Scholarship** | 404, i403-2, 601, 605, 606, i704-2 |
| **Scope of accreditation** | foreward |
| **Section of Legal Education and Admissions to the Bar** | 106(15) |
| **Self study** | i101-1, 202 |
| **Seminars** | 302(b), 403(3), i402-2, i701-2 |
| **Sound educational policies** | 101 |
| **Sound educational program** | 201 |
| **Standards** | |
| amendment of | 803 |
| definition | 106(16) |
| **Student body expansion** | i105-1 |
| **Student/faculty ratio** | i402-1, i402-2, Appendix 2 |
| **Students in externships** | 305 |

| Key Word | Standard ("i"=Interpretation) |
| --- | --- |
| Student loan programs | 510 |
| Substantial compliance | 101, 102, 103, 104 |
| Teaching effectiveness | 401 |
| Teaching policies | 404 |
| Transcript | i502-1 |
| Transfer of accreditation | 101-2 |
| Transfer credit | |
|     state-accredited law schools | 506 |
|     foreign law schools | 507 |
| Tuition income | i209-2 |
| Twenty Hour Rule | 304(f) |
| Undergraduate institution, qualified | 502(a) |
| Undergraduate requirements | 502 |
| University | 106(17) |
| University affiliation | 209 |
| Unqualified Students | 501(b) |
| Variance | 802 |
| Withdrawal of approval | |
|     authority of ABA | 103(b), 801(a) |
|     graduates, impact on | i103-1 |
| Writing experience | 302-3 |