UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THOMAS M. COOLEY LAW SCHOOL, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>COUNCIL OF THE SECTION OF LEGAL )<br>EDUCATION AND ADMISSIONS TO THE BAR )<br>OF THE AMERICAN BAR ASSOCIATION, )<br>)<br>and )<br>)<br>THE AMERICAN BAR ASSOCIATION, )<br>)<br>*Defendants*. )<br>) | Civil Action No. 05cv2317 (RJL) |

**PLAINTIFF THOMAS M. COOLEY LAW SCHOOL'S REPLY TO
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Cooley reluctantly acknowledges that the Council has already delayed its processing of Cooley's applications for Acquiescence in Branch Campuses in Grand Rapids and Oakland to the point that it would be impractical to ask the Court to direct that those applications be considered at the Council's February 2006 meeting. It is not too late, however, for the Court to address Cooley's primary concern: that the Accreditation Committee and the Council, even if they do not act on Cooley's branch campus applications until April/June 2006, will cause further unreasonable delay because they will not be ready, willing and able to make a reasoned, fully informed decision on the

merits of those applications in accordance with the Council's prescribed Standards and Interpretations.[1]

As alleged in Cooley's verified complaint (at ¶¶ 35-38), the site inspection team that visited Cooley in October 2005 was confused about its mission. They told Cooley that they had been informed by the Consultant's office that they were to inspect and report on Satellite Campus operations, not on Branch Campus operations, as Cooley had requested. Accordingly, Cooley's primary concern at this point is that the soon-to-be-completed site inspection report will not contain information necessary for the Accreditation Committee or the Council to consider and dispose of Cooley's Branch Campus applications on the merits and that the Accreditation Committee and the Council will use that lack of information or some other perceived procedural problem, as they have in the past, as an excuse for failing to assess Cooley's applications on their merits in accordance with the prescribed Standard's and Interpretations.

By their previous actions, the Accreditation Committee and the Council have confirmed that Cooley is a fully accredited law school currently in compliance with all Standards and Interpretations. Three years and a half years have now passed since

---

[1] Defendants' claim- and issue-preclusion arguments are meritless. The issue presented in Cooley's earlier litigation was whether the Council had abused its discretion or violated the settlement agreement by failing to dispose of Cooley's previous applications on their merits at the Council's August 2004 meeting. *See Thomas M. Cooley Law School v. American Bar Ass'n*, 376 F. Supp. 2d 758, 771-75 (where the court reviews the Council's "Decision to Defer Action on the Applications"). The court decided that the Council had not abused its discretion or violated the agreement. Its further statement, that "the Council's decision to defer action until the Spring of 2006" was "adequately explained and makes imminent sense", 376 F. Supp. 2d at 773 (emphasis added), was not necessary to any claim or issue raised in that litigation. Nor is this lawsuit based on the same cause of action as the previous suit. The previous court's words concerning the timing of the Council's consideration of Cooley's subsequent applications therefore have no preclusive effect. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Role Models America, Inc. v. Penmar Dev. Corp.*, 394 F. Supp. 2d 121, 128-29 (D.D.C. 2005).

Cooley filed its original application for acquiescence in a satellite campus at Oakland. During that period, neither the site evaluation teams, the Accreditation Committee nor the Council has ever made a single finding or conclusion that Cooley's proposed programs did not comply with the substantive requirements governing satellite campuses as set forth in the Council's new Interpretations. Verified Complaint ¶ 41.

In his declaration, ABA Consultant John Sebert states, "It is my understanding that [the site inspection team's] report will address Cooley's applications for prior acquiescence in branch campuses in Grand Rapids and Oakland." Sebert Declaration at ¶ 48. He further states, "Cooley's applications for prior acquiescence will be considered at the Accreditation Committee's April 2006 meeting," *id.* at ¶ 49, and "After its April 2006 meeting, the Committee will issue recommendations on Cooley's applications for prior acquiescence. Those recommendations will be considered by the Council at its June 2006 meeting," *id.* at ¶ 51.[2] The Consultant does not purport to speak on behalf of the Council; nor does he purport to have the authority to do so. At this point, all Cooley seeks is that the Consultant's "understanding" and assertions be converted into commitments by or orders to the Council.

Accordingly, the Court should issue an order directing the Council, during the pendency of this action, to process the branch-campus applications that Cooley

---

[2] Note that the Consultant does not deny that his office failed to provide the site inspection team with copies of Cooley's applications, saying only that the team "was provided written material in advance of its site visit" and that "this material included the applications." Sebert Declaration at ¶ 46. *Cf.* Guernsey Declaration at ¶¶ 4 (same). This is not inconsistent with Cooley's assertion that the team members had not received the applications from the Consultant's office and that Cooley had therefore sent them copies. *See* Verified Complaint ¶¶ 35. Nor is anything in defendants' declarations competent to refute Cooley's assertion that the chair of the team (not Mr. Guernsey) informed Cooley that the Consultant's Office had not provided the team with copies of Cooley's branch-campus applications, and that the Consultant had ordered him and his team not to inspect or report on those applications. *Id.*¶

submitted to the Council on June 22, 2005 (within the timeframe established by the Council's own rules) by taking whatever actions the Council deems necessary, consistent with Cooley's status as a fully approved law school that is in compliance with all current ABA Standards and Interpretations, for the Council to be in a position to make a reasoned, fully informed decision on the merits of those applications at its June 2006 meeting.[3]

By the requested order, Cooley seeks to avoid a repetition of its previous experiences with the Consultant, the Accreditation Committee and the Council. In the past, Cooley has relied on the Consultant's understandings and assurances only to find later that the Accreditation Committee and Council did not share his understandings or views. For example, the Consultant advised Cooley to structure its previous application based on the requirements set forth in the new Interpretations that were then pending approval by the Council. Verified Complaint ¶ 15. The Accreditation Committee and Council

---

[3] Such an order would, among other things, require the Council, under its rules, to (a) to complete all required site inspections and fact-finding necessary to process and act upon Cooley's branch-campus applications and forward all site inspection and fact-finding reports to Cooley for review and comment no later than 45 days before the April 2006 Accreditation Committee meeting (Rules 18(h), (i), (j) and (k)); (b) ensure that the Oakland and Grand Rapids site inspection reports include all facts necessary to enable the Accreditation Committee and the Council to decide whether Cooley's branch campus applications meet the substantive requirements for the opening of branch campuses at those locations and, if not, for the opening of two-year satellite campuses at those locations (*id.*); (c) submit Cooley's applications and associated site inspection and fact-finding reports, along with Cooley's responses thereto, for consideration by the Accreditation Committee at its April 2006 meeting (Rule 18(j), (k) and (l)); (d) require the Accreditation Committee (i) to determine whether Cooley's proposed programs meet the substantive requirements for the opening of branch campuses and, if not, whether Cooley's proposed programs meet the requirements for the opening of two-year satellite campuses; and (ii) to issue its recommendation to the Council in time for Cooley to respond to that recommendation before the Council's June 2006 meeting (Rule 18(o)); and (e) require that Cooley's branch-campus applications, the Accreditation Committee's recommendations on those applications and Cooley's responses thereto be submitted for consideration and decision on the merits by the Council at its June 2006 meeting (Rule 18(r)).

nonetheless refused to consider the applications on that basis, insisting instead on applying the old Interpretations, which were superseded one day after the Council denied Cooley's application. *Id.* ¶¶ 18-21. In addition, the Accreditation Committee and Council have on at least three occasions failed to address the merits of Cooley's applications for additional operations even though Cooley had demonstrated that its proposed operations satisfied all the prescribed Standards and Interpretations for such operations.

In other cases, the Council has avoided ruling on the merits of Cooley's applications by adopting unreasonable and distorted interpretations of its Rules of Procedure. The position the Council now takes with respect to the first sentence of Rule 18(i) of its Rules of Procedure (Opp. at 20) provides a perfect illustration of how the Council takes liberty with its rules to justify arbitrary action. That sentence reads: "The [site inspection] team shall promptly submit its report to the Consultant." In support of its position that none of its rules limit the time the Council may take to process an application, the Council says this sentence does not address the period after the inspection during which the team is expected to write and submit its report. Rather, says the Council, the rule allows the team to take as long as it wants to complete its report, directing only that, once it has done so, the team must promptly submit the report to the Consultant. In other words, the Council takes the position that it went to the bother to adopt a rule that tells inspection teams not to forget to send their reports to the Consultant right away once the reports are completed, but, by its silence, tells the teams that there is no restriction on the amount of time that they may take to complete the report. Although the Council's interpretation of the rule might make sense to a rule-reading robot that had no ability to deviate from a literal translation of the text, it makes absolutely no sense to a rational

being who would immediately and invariably recognize that the rule was meant to require teams to complete and submit their reports promptly after they finish the inspection.

The Council's interpretation of Rule 18(c) is similarly distorted. That rule informs a law school that its "application for acquiescence must be submitted to the Consultant's office at least 120 days prior to a scheduled meeting of the Accreditation Committee in order for the proposal to be considered by the Committee at that meeting." Here again, the Council says this rule imposes no temporal restraints on its processing of applications. This time eschewing the literalism it applied to Rule 18(i), the Council says Rule 18(c) must be interpreted as if it read, "A school must submit its application at least 120 days in advance of a meeting in order for the proposal to be <u>eligible for</u> consideration at that meeting." *Cf.* Opp. at 19 (the rule prescribes "a minimum number of days ... within which a school's application must be submitted in order to have the opportunity for review at the next Accreditation Committee meeting"). Thus, regardless of when a school submits an application to the Consultant, the Council is free to submit that application to any subsequent meeting of the Accreditation Committee. It might be the next meeting, or it might be the one after that, or the one after that, or the one after that, or . . . . whenever.

If the Council abides by the Consultant's present assertions and understandings concerning the timing of the Council's consideration of Cooley's current applications, these rules and the Council's supposed interpretation of them will no longer be relevant to the disposition of the current motion. The Council's ad hoc interpretations do, however, provide a basis for understanding why Cooley, despite the Consultant's assertions and understandings, doubts that the Accreditation Committee and the

Council will give Cooley's current branch campus applications fair and timely consideration and assess them on their merits in accordance with the applicable Standards and Interpretations. And they, along with the Council's previous unreasonable delays in considering and disposing of Cooley's applications on their merits in accordance with the prescribed Standards and Interpretations, provide an adequate basis for the requested preliminary injunction.

/s/ ALEX BLANTON
Alex Blanton, D.C. Bar No. 169623
Michael L. Cioffi
BLANK ROME, LLP
 600 New Hampshire Ave., NW
 Washington, D.C. 20037
 202-772-5909
 Fax: 202-572-8357
 Email: Blanton@BlankRome.com

*Counsel for plaintiff Thomas M. Cooley Law School*

## CERTIFICATE OF SERVICE

I certify that on this 23d day of December, 2005, I caused the foregoing Plaintiff Thomas M. Cooley Law School's Reply to Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction to be served on defendants' counsel by the Electronic Court Filing system.

/s/ ALEX BLANTON
Alex Blanton, D.C. Bar No. 169623
BLANK ROME, LLP
  600 New Hampshire Ave., NW
  Washington, D.C. 20037
  202-772-5909
  Fax: 202-572-8357
  Email: Blanton@BlankRome.com

*Counsel for plaintiff Thomas M. Cooley Law School*